**Rhoda V. McINTYRE, Individually and as Representative of a Class, et al., Intervening Plaintiffs,**

**v.**

**KDI CORPORATION et al.**

No. 7801.

United States District Court, S. D. Ohio, W. D.

Nov. 21, 1975.

Thomas L. Conlan, Cincinnati, Ohio, for plaintiffs.

Douglas G. Cole, Cincinnati, Ohio, for KDI & Verkamp.

L. Clifford Craig, Cincinnati, Ohio, for First National Bank of Cincinnati.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

DAVID S. PORTER, District Judge:

In this securities fraud action, the former owners of 65% of the stock of what was Verkamp Corporation seek rescission of a merger agreement pursuant to which Verkamp Corporation merged with KDI–Verkamp, a wholly-owned

shell subsidiary of defendant KDI Corporation and the former Verkamp shareholders (including plaintiffs) exchanged their stock in Verkamp Corporation for stock in KDI Corporation. Plaintiffs also seek rescission of the management contract between KDI–Verkamp and KDI under which KDI–Verkamp is required to pay KDI a management fee and an amount in lieu of taxes. Alternatively, plaintiffs seek $1,226,732 in damages, and, in addition to rescission or damages, they request an accounting to recover the post-merger profits of KDI–Verkamp which, through September, 1975, totalled approximately $1,300,000.

Subsequent to the merger of Verkamp into KDI–Verkamp, KDI–Verkamp in turn was merged with yet another KDI subsidiary, KDI-Herbert-Verkamp-Calvert (KDI–HVC). At present, the former Verkamp Corporation continues to exist more or less autonomously as a division of KDI–HVC, although defendants KDI and KDI–HVC desire to integrate the business of the Verkamp Division with the Herbert and Calvert Divisions. Defendants anticipate increased efficiencies and greater sales if such integration can be effected. Currently, the KDI–HVC plants are located in one case in the Ivorydale section of Cincinnati and in another case in a residential area. The Ivorydale plant is precluded from expansion by its present location and the other plant represents a significant safety risk to the surrounding residents. If and when the Verkamp Division is integrated with the other KDI–HVC operations, defendants anticipate purchasing a newer plant for the combined operations, to be located so as to expand production, reduce transportation charges, and increase safety.

### PRELIMINARY RELIEF SOUGHT

Plaintiffs request preliminary injunctive relief restraining defendants from upstreaming any funds or assets from the Verkamp Division of KDI–HVC or otherwise commingling the funds and assets of Verkamp with the operations of the Herbert-Calvert Divisions of KDI–HVC. Plaintiffs also seek to enjoin the consolidation of the Verkamp plant and operations with any other KDI interest. Defendants resist these requests for preliminary relief and request an immediate hearing on plaintiffs' motion. In the interim, the status quo is being maintained by an agreement that *no funds* will be upstreamed from the Verkamp Division and the merger of KDI–Verkamp into KDI–HVC will not be fully consummated by the coalescence of administrative and sales forces, wholesale reduction in employees, or a transfer of operations.

The situation has reached a point of considerable urgency so far as defendant KDI is concerned, due not only to the prolonged pendency of plaintiffs' request for preliminary relief, but also because KDI presently is in severe need of ready cash to meet payments due to First National Bank under a Revolving Credit Agreement. This credit agreement calls for payments in the aggregate of $5 million by May 31, 1976. If KDI meets this goal, it is entitled to extend the Revolving Credit Agreement at the favorable interest rate of 6% on the remainder of its total obligation of $13,935,175. If, on the other hand, KDI cannot make the prepayment of $5 million by May 31, 1976, the entire amount remaining comes due immediately, forcing KDI to borrow that amount at the then current commercial rate, probably about 10%, or, failing this, forcing KDI into receivership. KDI argues that it is entitled to draw on the surplus funds accumulated in KDI–Verkamp/KDI–HVC, and that, unless it does so, it faces default. Defendants also urge immediate resolution of plaintiffs' motion restraining consolidation of the KDI–HVC operations.

Defendants believe that certain matters of law—as distinguished from questions of fact—preclude the plaintiffs from obtaining the preliminary relief sought, without regard to the question of the probability of plaintiffs' success on the merits.

Defendants presently seek a ruling from the Court on these rather complex legal issues and request that if these matters cannot be resolved on the present record and the written briefs of

the parties, the Court set the matter for an immediate hearing on all matters necessary to resolution of the motion for preliminary injunction *except* probable success on the merits, with a hearing on that issue to follow, if necessary.

## PROCEDURAL HISTORY

It is important to a consideration of the question presented to mention in outline fashion the procedural history of this litigation. This suit was initiated as a class action on behalf of all former Verkamp shareholders. A few days after the filing of this suit, KDI itself filed a petition under Chapter XI of the Bankruptcy Act in this Court.

An owner of an acquired company filed a motion pursuant to § 328 of the Bankruptcy Act (11 U.S.C. § 728) to dismiss the proceedings and, in effect, to transfer them to Chapter X. This litigation is noteworthy because it necessitated a review of what happened to KDI and what efforts were made by new management (as distinguished from the management in control at the time of the acquisition) to put KDI on a sound basis. These events and the closely scrutinized claims of the objecting creditor that acts of bankruptcy had been committed are set forth in the Court's opinion on the appeal from this Court's order denying the motion to dismiss. See, *In the Matter of KDI Corporation, Debtor, etc.*, 477 F.2d 726, 728 (6 Cir., 1973). The review showed a careful analysis of KDI's condition by new management and aggressive policies to set things aright. See also, the opinion of this Court dated March 9, 1972, *In the Matter of KDI Corporation*, Bankruptcy No. 61,463. KDI has since been discharged, although the Bankruptcy Court retains jurisdiction over a number of claims (totalling approximately $8 million).

The original complaint named First National Bank as a defendant and asserted against it a fraudulent transfer claim in connection with the transfer by KDI to First National Bank a security interest in the stock of KDI's subsidiaries, including KDI–Verkamp and/or KDI–HVC. By subsequent decisions of this Court,

class action certification was denied plaintiff McIntyre and leave was granted to various other former Verkamp shareholders to intervene, subject to whatever defenses defendants might interpose. Plaintiff McIntyre's request for leave to file a second amended complaint asserting against First National Bank complicity in the various securities fraud claims originally asserted *only* against the other—or KDI—defendants was granted in part and denied in part. That decision, involving an important and unresolved question concerning the appropriate period of limitation, was certified for interlocutory appeal and has in fact been appealed to the Sixth Circuit. At the time of the decision on plaintiff's request for leave to file a second amended complaint, the Court also ruled on a request to add as parties to this suit the remaining members of the putative class of former Verkamp shareholders. The motion to add these parties was denied. Most recently, defendant First National Bank's motion to strike from the intervening plaintiffs' consolidated complaint the securities fraud actions asserted against it was granted in part and denied in part, the Court holding that the intervenors' right to assert these claims was no greater and no less than the original plaintiff's. Accordingly, unless our determination of the applicable period of limitations is reversed by the Sixth Circuit in the pending interlocutory appeal, defendant First National Bank is at least potentially liable as a secondary participant or controlling person in the securities fraud claims asserted in connection with the Verkamp/KDI–Verkamp merger. No preliminary injunctive relief, however, is sought against defendant First National Bank, except in aid of the requested injunction against KDI.

## DISCUSSION

KDI does not dispute that the Court has the authority to grant a preliminary injunction of the type sought by plaintiffs, *provided the circumstances make such relief appropriate.* (Doc. 119, p. 11.) Indeed, the Court's authority in this regard is well established. *Deckert v. In-*

*dependence Store Corporation*, 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189 (1940); *J. I. Case Co. v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970).

■■ Similarly, the essential prerequisites of preliminary injunctive relief are not in dispute. The Court must consider: (1) Has the movant made a strong showing of probable success at trial? (2) Has the movant shown irreparable injury? (3) Would issuance of the preliminary injunction cause substantial harm to the adverse parties or other? (4) Where lies the public interest? Wright & Miller, Federal Practice and Procedure, § 2948; *Detroit News Pub. Ass'n v. Detroit Typo. Un., No. 18, Etc.*, 471 F.2d 872 (6 Cir., 1972); *North Avondale Ass'n v. Cincinnati Metro. Housing Auth.*, 464 F.2d 486 (6 Cir., 1972); *Garlock, Inc. v. United Seal, Incorporated*, 404 F.2d 256 (6 Cir., 1968). Also see: *The Cincinnati Bengals, Inc. v. Bergey*, No. C–1–74–142 (S.D.Ohio, W.D. May 14, 1974), aff'd 6th Cir., August 27, 1974; *Plain Dealer Publishing Co. v. Cleveland Typographical Union*, 520 F.2d 1220 (6 Cir., 1975) (adopting *per curiam* the decision of the District Court). As indicated above, the parties have requested that the Court resolve the question of plaintiffs' entitlement to the temporary relief sought without regard to the requirement that plaintiffs, as the moving parties, must make a showing of probability of success on the merits. Only in the event that the Court determines that plaintiffs are otherwise entitled to the relief sought is a hearing to be set on that issue. This arrangement has been adopted in view of the substantial legal questions which defendants have raised regarding the ap-

propriateness of the relief sought and in view of the considerable expense and judicial time which would be required by a hearing on plaintiffs' probability of ultimate success.

Thus, the question before the Court is the appropriateness of the preliminary relief sought, irrespective of the probability of plaintiffs' success. It is important to note at the outset, as defendants do in their brief, that the plaintiffs' attack is actually double-barreled. The initial thrust of the original motion was plaintiffs' request for a status quo injunction to preserve the autonomy and integrity of the former Verkamp Corporation within the KDI structure in order to maintain rescission as a viable alternative to damages.[1] But, at present, the foremost concern seems to be the second aspect of the relief sought, namely, the request for an order *freezing assets* of KDI in order to prevent their depletion.[2] The relief sought in connection with the second aspect of the motion is concerned largely with the collectibility of plaintiffs' damages award should they prevail on the merits. It is readily apparent that different factors must be weighed in considering the appropriateness of these two different aspects of plaintiffs' request for injunctive relief.

## STATUS QUO INJUNCTION

■ A status quo injunction would be appropriate in this case only if plaintiffs ultimately would be entitled to rescission. Generally speaking, there is no dispute but that a suit to rescind a merger agreement or other securities transaction induced by fraud and to recover the consideration given up may be maintained in equity where there are circumstances making the legal remedy inadequate.

---

1. "Further, plaintiff moves for a preliminary injunction enjoining said defendants, their officers, agents, attorneys or any other person acting for or on their behalf, from consolidating the operations of Verkamp-Calvert Division of the Herbert-Verkamp-Calvert Chemical Company with the Herbert Division of said corporation under the management of the Herbert Division." (Doc. 39.)

2. "Further, plaintiff moves for a preliminary injunction enjoining all defendants, their offi-

cers, agents, attorneys or any other person acting for or on their behalf, from causing any cash or other property of or generated by the former Verkamp Corporation to be paid to KDI Corporation or any subsidiary of KDI Corporation or The First National Bank of Cincinnati either by way of management fees, loans, or any other payments." (Doc. 39.)

*Deckert v. Independence Shares Corp., supra,* 311 U.S. at 289–290, 61 S.Ct. 229.[3] The rescinder, however, must be prepared to meet "rescission's own peculiar prerequisites" including "ability to restore the seller to the *status quo.*" 3 Loss, Securities Regulation 1627.

Defendant KDI contends that plaintiffs, being holders of only 65% of the KDI securities exchanged for the stock of the Verkamp Corporation, cannot obtain rescission of the merger agreement in this case because they are unable to restore defendant to the *statu quo ante* by return of 100% of the stock issued by KDI to the former Verkamp shareholders, not all of whom are parties to this litigation. Defendant KDI also argues that rescission is impossible as a practical matter since it cannot restore plaintiffs to the *statu quo ante.*

■■ That the plaintiff in an action under the federal securities acts for rescission of a sale of securities pursuant to a merger agreement must be in a position to return the defendant to the *statu quo ante* by tender back of the consideration received is well established. See, *e. g., Parker v. Baltimore Paint & Chemical Corp.,* 244 F.Supp. 267 (D.Colo. 1965). Also see: *Meis v. Sanitas Service Corporation,* 511 F.2d 655, 658 (5 Cir., 1975); *Fox v. Kane-Miller Corp., et al.,* 398 F.Supp. 609 (D.Md., 1975); *Bowers v. Columbia General Corporation,* 336 F.Supp. 609, 613–615 (D.Del., 1971). *Cf., Goldman v. Bank of Commonwealth,* 467 F.2d 439, 446 (6 Cir., 1972); *Restatement, Law of Restitution,* § 65; 3 Loss, Securities Regulation 1793. But it is not altogether clear that this requirement necessarily precludes rescission in this case. As defendants pointed out in their memoranda in opposition to plaintiff McIntyre's motion to join the remaining former Verkamp shareholders as involuntary plaintiffs, a plaintiff's right of action under the federal securities acts is tortious in nature, see, *e. g., Goldman v. Bank of Commonwealth, supra,* and, therefore, plaintiffs' claims are several, not joint. *General Investment Co. of Connecticut v. Ackerman,* 37 F.R.D. 38, 41 (S.D.N.Y., 1964). "The plaintiffs' claim for relief arises out of the allegedly tortious conduct of the defendant and does not have its basis in contract rights." *Id.; cf.,* Prosser, Torts 4th ed., § 105. Therefore it would appear to be sufficient that plaintiffs tender back whatever consideration plaintiffs themselves received, provided that, in view of all the circumstances, this would be equitable. *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 388, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); *SEC v. National Securities, Inc.,* 393 U.S. 453, 463–464, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969). But, *cf., Basch v. Talley Industries, Inc.,* 53 F.R.D. 9, 12 (S.D.N.Y., 1971).[4]

But the futility of proceeding on that basis in the present case is apparent from the fact that defendants cannot make a similar *pro tanto* restoration to plaintiffs of the consideration given up by them in exchange for the KDI securities. Verkamp Corporation no longer exists, having been merged into KDI–Verkamp. Thus, defendants plainly cannot give back Verkamp Corporation stock although defendants might plausibly be required to transfer to plaintiffs 65% of the stock of KDI–Verkamp, were it not for the subsequent merger of KDI–Verkamp into KDI–HVC.[5] But

---

**3.** Plaintiff McIntyre in the prayer of her second amended complaint states: "2. Because KDI is unable to respond in damages because of its insecure financial situation and because defendant First National and the banks for which it is agent and other banks have encumbered the assets and stock of KDI and Herbert, a damage remedy is inadequate." Plaintiff's second amended complaint, ¶ 2, p. 17 (doc. 93); consolidated complaint of intervening plaintiffs, ¶ 2, p. 21 (doc. 103).

**4.** Federal law, not state law, controls. In any event *Block v. Block,* 165 Ohio St. 365, 135 N.E.2d 857 (1956) (cited by defendants) is not apposite as that case was a suit to set aside an alimony decree and stands for the proposition that a party must tender back any property received under a judgment before his action to set aside that judgment may be heard. But *cf.,* 47 O.Jur.2d 552–553; Restitution, § 37.

**5.** Whether or not plaintiffs would have standing to rescind or set aside this subsequent merger has not been briefed by the parties. But *cf., Mills v. Electric Auto-Lite Co., supra.*

even this would not substantially restore plaintiffs to their former position as the former Verkamp Corporation is bound to KDI by management contracts which plaintiffs clearly do not have standing to set aside in this action; additionally, the KDI-held stock of KDI's various subsidiaries, apparently including KDI–Verkamp, and/or the assets of these subsidiaries, have been pledged to defendant First National Bank and—allegedly—to other banks as well. Plaintiff McIntyre's second amended complaint, ¶ 2, p. 17 (doc. 93); consolidated complaint of intervening plaintiffs, ¶ 2, p. 21 (doc. 103). Compare *Fox v. Kane-Miller Corp., et al., supra.* (In action under § 12(2) of the 1933 Act, plaintiffs argued that rescission was impossible (1) because they no longer had all the stock received by them and (2) because the merged corporation had been changed by its new parent corporation so as to make return to *statu quo ante* impossible.) Also see *Gerstle v. Gamble-Skogmo*, 478 F.2d 1281, 1289–1290 (2 Cir., 1973), relevant facts set forth in opinion below, 298 F.Supp. 66, 74–89 (E.D.N.Y., 1969); *Myzel v. Fields*, 386 F.2d 718, 731–732 (8 Cir., 1967), cert. den., 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968).[6]

■ Accordingly, we hold the ultimate relief sought—rescission—is not available. Because rescission is no longer an available or appropriate remedy, it follows that a *status quo* injunction freezing the form of the defendant corporation's business should not issue. We agree that the appropriate test was well stated by Judge Stapleton in *Bowers v. Columbia General Corporation, supra,* at 336 F.Supp. 615:

"Unless and until it is shown that an imminent transaction will foreclose

this Court from doing substantial justice by way of rescission, I believe the management of [the defendant corporations] should be left to pursue their fiduciary duties unfettered by Court order."

But, obviously, when it is shown that rescission of a merger agreement has been foreclosed by events or is otherwise impracticable or inequitable, a preliminary injunction designed to preserve intact a corporation's form of business so as to facilitate such rescission is unnecessary and unwarranted.

■ In this case there is, however, another possible basis for plaintiffs' request that the Court act to preserve the autonomy of the former Verkamp Corporation, and that is to facilitate the accounting for profits prayed for in their complaints. Applying the standard set forth above, from *Baumel*, we hold that the management of KDI and its subsidiaries KDI–Verkamp and KDI–HVC should be allowed to pursue their fiduciary obligations unfettered, unless and until it is shown that some imminent transaction or transactions will foreclose this Court from doing substantial justice in this case, by way of an accounting. No such showing has been made, nor has there been any authority cited to support any contention that plaintiffs have a continuing right to an accounting, assuming, of course, that they prevail on the merits.

Moreover, defendant KDI has made a showing in this case that enjoining consolidation of the Verkamp operation and the other KDI–HVC operations would adversely affect KDI's efficiency and profits, with a resultant negative influence on the collectibility of any judgment against KDI. Additionally, there is the fact that consolidation of the

---

6. Judge Larson in his opinion in *Kuban, et al. v. KDI Electro-Tec Corp.* and *KDI Corporation*, No. 4–70–Civil 499 (D.Minn., 4th Div. July 26, 1974), stated:

"The assets of Kurt Mfg. have been pledged to secure loans made to KDI. Plaintiffs seek to have the Court grant them 90 days in which to attempt to negotiate with the banks for a release of the Kurt Mfg. assets.

Because of the apparent futility of such proposed negotiations, the Court is limiting its award to the rescissional damage remedy."

We believe that this correctly states the law although this opinion was subsequently withdrawn and a settlement encompassing rescission agreed upon. See Judge Rubin's recent decision, *Davis v. Comed, Inc.*, No. 7876 (S.D. Ohio, W.D.) Oct. 31, 1975, pp. 9–11.

KDI–HVC operations at a new or alternative site might well result in diminished transportation and increased safety, two factors which warrant consideration in weighing the public's interest in this matter. In sum, this Court finds that this aspect of the plaintiffs' request for injunctive relief must be denied.

"FREEZE" ORDER PRESERVING ASSETS

The second aspect of plaintiffs' request for preliminary injunctive relief is that portion of their motion which seeks to restrain defendants from transferring the cash or other assets of the former Verkamp Corporation to KDI or any of its subsidiaries or to the First National Bank (docs. 39, 117).

There has been no "upstreaming" of Verkamp funds since October 12, 1970, according to the affidavits and other materials on file with the Court, although on or prior to that date Verkamp/KDI–Verkamp advanced KDI some $245,000.[7]

This has been largely the result of an agreement among counsel (doc. 39, p. 3; see also, entry of December 3, 1973, doc. 54), from which defendant now seeks to be released. Conference *in camera*, September 10, 1975, doc. 120; doc. 119, Exhibit A.

As a result of this agreement, Verkamp has accumulated—as of September 6, 1975—some $1,713,308, of which $766,301 represents a cash reserve for customer deposits on containers. Affidavit of Mr. Matthey, doc. 119. The balance of $946,377 "represents cash on hand when KDI acquired Verkamp ($300,064), less advances to KDI ($245,000) in 1970, plus proceeds from the sale of an unneeded portion of Verkamp's real estate ($82,000) and plus other pre-tax profits, unpaid management fees and other net cash generated over the last five years ($564,313)." *Id.* Verkamp's minimum and maximum necessary working capital are said to be $100,000 and $200,000, respectively. *Id.* Using the minimum figure this leaves some $846,000-plus lying dormant in Verkamp's coffers. (Of this, $778,481 represents unpaid management fees ($289,757) and amounts in lieu of taxes ($388,724) due KDI under its management contract. *Id.* KDI urgently wants to apply this dormant $846,000 sum along with any additional cash similarly accumulated by Verkamp through May 31, 1976, to the final "balloon" payment needed to complete the $5 million prepayment required to continue KDI's Revolving Credit Agreement with First National Bank. *Id.*

In support of the motion plaintiffs contend that to allow KDI to siphon off these accumulated funds in this manner would jeopardize their potential recovery. Their brief argues (1) that KDI cannot meet its obligations during 1975 and 1976 under its various credit agreements, continue operations, and respond in damages to plaintiffs; and (2) that KDI faces dismemberment and receivership as a result of pending litigation against it and its subsidiaries. In short, plaintiffs' position is that unless they are able to invoke this Court's equity powers to preserve Verkamp's pool of liquid assets, any judgment which they might obtain will be uncollectible. On this issue, plaintiffs apparently feel that they are entitled to a hearing. Doc. 117, p. 6.

At this point, then, the Court is required only to state the applicable principles which govern this matter. Foremost among these is the recognition that "an asset freeze may be appropriate to assure compensation to those who are victims of a securities fraud." *International Controls Corp. v. Vesco*, 490 F.2d 1334, 1347 (2 Cir., 1974), cert. den., 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236 (1974); *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1105–1106 (2 Cir., 1972). Such relief, however, is clearly extraordinary in nature and plaintiffs must, therefore, make a suitable showing.

In this connection, defendant KDI contends that plaintiffs must show

---

7. See, *e. g.*, doc. 119 with attached affidavit of Louis W. Matthey.

**600**

more than that the release of the Verkamp funds may render any ultimate judgment against KDI and its Verkamp subsidiary uncollectible; rather, plaintiffs must show that there is a substantial risk of waste, mismanagement or fraudulent conversion or misappropriation. Defendant's contention is supported by the cases. *Vesco, supra; Manor Nursing Homes, supra.* In short, the fact that plaintiffs may have been the victims of fraud does not in and of itself give plaintiffs a preferred status over KDI's other creditors and suitors, some of whom may be in the same position as plaintiffs herein. Nor does the fact that plaintiffs have named First National Bank as a co-defendant strengthen their position, because if they are able to prove First National Bank's complicity in the underlying fraud, they will be able to look to its assets as well when it comes time to collect their judgment.

There is a second consideration that needs to be weighed in these situations, which was succinctly stated by Judge Timbers in the *Manor Nursing Centers* case, *supra*, at 1105–1106:

> "One of the chief reasons for requiring defendants to refund illegally obtained proceeds of a public offering is to compensate defrauded investors. To effect this purpose, there may be circumstances where a district court should temporarily freeze defendants' assets to insure that they will be available to compensate public investors. *Freezing assets under certain circumstances, however, might thwart the goal of compensating investors if the freeze were to cause such disruption of defendants' business affairs that they would be financially destroyed. Thus, the disadvantages and possible deleterious effects of a freeze must be weighed against the considerations indicating the need for such relief."* (Emphasis added.)

Although plaintiffs suggest in their brief that a "thorough analysis of the balance of hardships in this case would require an evidentiary hearing," doc. 117, p. 6, this case seems to fall squarely within that class of cases in which an asset freeze might well "thwart the goal of compensating investors" by causing "such disruption of defendants' business affairs that they would be financially destroyed." At stake should KDI default on its Revolving Credit Agreement and again be thrown into receivership, are the interests not only of plaintiffs but also of KDI's other investors and creditors, as well as the public interest in maintaining KDI as a going entity capable of paying its debts and providing services to its customers and subsidiaries, as well as employment to its present and future employees. Also see: *Vesco, supra*, at 1351; *Garlock v. United Seal, Incorporated*, 404 F.2d 257, 258 (6 Cir., 1968).

The Court concludes that on the basis of what is before it that plaintiffs' motion for preliminary injunction should be and it is, therefore, denied. A further hearing on plaintiff's motion is not necessary. However, an early hearing on the merits is called for and will be set as soon as possible.