**In re KDI CORPORATION, Debtor.**

**ESTATE OF J. Richard VERKAMP, Sr., Claimant,**

**v.**

**KDI CORPORATION, Objector.**

**Bankruptcy No. 61463.**

United States Bankruptcy Court, S.D. Ohio, W.D.

Oct. 12, 1990.

Jerome J. Metz, Jr., C.R. Bowles, Cincinnati, Ohio, for debtor, objector.

David S. Mann, Cincinnati, Ohio, for claimant.

Charles Caldwell, Cincinnati, Asst. U.S. Trustee.

## DECISION ON MOTION TO AMEND PROOF OF CLAIM OF ESTATE OF J. RICHARD VERKAMP, SR.; ON MOTION AND CROSS–MOTION FOR SUMMARY JUDGMENT; DISMISSAL OF PROOF OF CLAIM

BURTON PERLMAN, Chief Judge.

On October 18, 1988, claimant filed a motion to allow an amended proof of claim of the Estate of J. Richard Verkamp, Sr. (hereafter "claimant"). KDI filed a memorandum in opposition to the motion, and claimant then filed a reply memorandum. A pretrial conference was held on May 5, 1989. At that conference, the court indicated that it perceived a threshold issue, whether assertion of claimant's claim and/or amended claim is time barred by laches or otherwise. The parties requested an evidentiary hearing on this issue. A discovery cutoff date preparatory to such hearing of September 1, 1989 was set, with memoranda thereafter to be filed by the end of September. Meanwhile, a settlement conference was scheduled for May 16, 1989. The settlement effort proved unsuccessful. Thereupon, the discovery cutoff date was reset to October 1, 1989 with memoranda to be filed by the end of October, 1989, and a trial setting made of November 15, 1989. Substantial discovery efforts followed.

On October 23, 1989, KDI filed a motion for summary judgment. The motion states that it is based upon the ground that claimant "had the duty to timely and properly liquidate its claim against KDI" and failed to do so. This motion was filed October 23, 1989. On that same day, claimant filed its trial memorandum on the timeliness issue, and the next day, October 24, 1989, KDI filed its trial brief on the timeliness issue.

On October 25, 1989, KDI requested an expedited hearing on its motion for summary judgment, its purpose being to obtain an adjudication on its motion for summary judgment which, if granted, would avoid the need for the trial on the timeliness issue then projected. On November 2, 1989, claimant filed its reply memorandum on timeliness, and KDI did the same thing on the same date.

On November 7, 1989, another pretrial conference was held, and a pretrial order entered thereafter. Such pretrial order said: "At present, the parties and the court are concerned with the issue of timeliness of the amended claim." It was agreed at the conference to proceed to a resolution of debtor's motion for summary judgment, it being contemplated that claimant would file a cross-motion for summary judgment, with resolution of the issues raised by such motions to occur before the projected evidentiary hearing on the timeliness issue.

On December 8, 1989, claimant filed its cross-motion for summary judgment. Claimant said upon such filing that the basis for its motion was that KDI, as a matter of law, had the duty to go forward and cause a hearing to be held on its objection to the original claim. "Summary judgment on this issue would establish that KDI is the party responsible for any delay in this case and is thereby prevented from asserting any prejudice due to delay." Claimant combined with its memorandum in support of its cross-motion for summary judgment, its response to KDI's motion for summary judgment. Therein, claimant makes the statement that even if there were a failure in a duty timely to liquidate, KDI could not take advantage of this in the absence of a showing of actual prejudice. There followed then further responsive briefing by the parties on their respective motions for summary judgment.

This court had now been favored with three sets of memoranda by the parties, those submitted on the original motion, those submitted on the timeliness issue, and those on the cross-motions for summary judgment. In each set, the memorandum in chief is in length greater than 20 pages. At this juncture, it is unclear what

the parties believe the procedural posture of this case is. This court, however, has no doubt that everything which can possibly be said on behalf of either party has been said, and, further, that there is no dispute as to facts which we regard as material and sufficient to allow us fairly to render a judgment in this matter. Our conclusion is (1) that claimant's motion to amend its claim must be denied because of its failure timely to make such a motion, and (2) the objection of KDI to claimant's original claim must be sustained for want of prosecution.

The foregoing has dealt with the history of what is now before this court. Let us look at some history in this bankruptcy case.

This Chapter XI case was filed in this court a long time ago, on December 30, 1970. A plan of arrangement was confirmed by the District Court on June 1, 1973. The Order of Confirmation set a bar date of July 9, 1973 for the filing of claims.

The specific events from which the present controversy arise are equally old. On April 7, 1970, the Verkamp Corporation merged with a subsidiary of the debtor. J. Richard Verkamp was a major shareholder of Verkamp Corporation at that time. Shortly thereafter, on December 7, 1970, suit was filed against the debtor for rescission of the merger and for damages, based on fraud and securities law violations. On December 30, the Chapter XI bankruptcy case was filed.

The rescission suit was filed as a class action in the District Court for the Southern District of Ohio, and the named plaintiff was Rhoda McIntyre. Hereafter we will refer to that suit as "the McIntyre suit." Class action status was sought on behalf of all Verkamp Corporation's shareholders. Not long after that, on March 8, 1971, J. Richard Verkamp died. The present controversy involves the claim asserted on behalf of his estate by Dorothea P. Verkamp, Executrix (the Estate being hereafter referred to as "claimant").

Claimant filed a proof of claim in this court on August 7, 1972. At that time, the question of whether the McIntyre suit would be certified as a class action was still pending, and if it were so certified, this claimant would have been a member of the class. It will be instructive to pay attention to the contents of the proof of claim which was filed. The proof of claim is divided into Claim A and Claim B.

Under Claim A there is a recitation that the debt arises from the merger of the Verkamp Corporation with a subsidiary of debtor, and that the consideration therefor arises from the merger. At the heart of Claim A is the following:

2. That the above-named debtor became indebted to the shareholders of the former The Verkamp Corporation in the amount of all the shares, funds and other considerations which were transferred from the shareholders of the former The Verkamp Corporation and by the former The Verkamp Corporation to KDI Verkamp Corporation, a wholly-owned subsidiary of the Debtor, on April 7, 1970; and that it is still justly and truly so indebted. *Estate of J. Richard Verkamp, Sr.*, a former shareholder of The Verkamp Corporation claims his/her proportionate share of these considerations.

3. That the consideration of this liability is set out in a Plan of Merger Agreement between the former The Verkamp Corporation and KDI and KDI Verkamp Corporation executed March 30, 1970, and approved by The Verkamp Corporation stockholders on April 7, 1970 incident to the merger of The Verkamp Corporation with KDI Verkamp Corporation, a wholly-owned subsidiary of the Debtor.

\* \* \* \* \* \*

7. That this claim is not an election against the rescission of the above-identified Plan of Merger Agreement and related documents but is presented to maintain the rights of claimant pending the outcome of a litigation pending in the United States District Court for the Southern District of Ohio, Western Division, entitled RHODA V. McINTYRE, INDIVIDUALLY AND AS REPRESENTATIVE OF A CLASS vs. KDI CORPORATION ET AL., Civil Action

No. 7801, and is submitted without prejudice to the rights asserted by that suit.

Under Claim B, the proof of claim again makes reference to the McIntyre suit, and says:

12. That the successful prosecution of the above-identified litigation by Plaintiffs will result in a Court ordering the debtor to direct its wholly-owned subsidiary KDI Verkamp Corporation to account and return all stock, funds and other consideration and property of value acquired by the merger to Verkamp Corporation.

13. That in the event the Court finds in favor of the Plaintiffs as to the rescission right but that the rescission procedure is incapable of being accomplished, the debtor will be liable to the Class of Plaintiffs for damages in excess of Two Million Dollars plus such other consequential and exemplary damages and monies as the Court may see fit to award.

14. That by reason of the foregoing the above-named debtor was, at and before the filing by it of the petition herein, and still is, justly and truly liable to the claimant for her proportionate share of the above sum.

On May 23, 1973, debtor filed an objection to the proof of claim of claimant.

In addition to filing its proof of claim, claimant filed in the bankruptcy court an application to determine dischargeability on July 24, 1973. Debtor filed an answer to that application on August 29, 1973. Thereafter, on August 29, 1973, Judge Raymond J. Pellman of this court issued an order stating:

ORDERED, that the Application to Determine Dischargeability of Debts filed by Natalie V. Schoeny, et al, shall not come on for hearing before this Court until such time as Case No. 7801, pending in the United States District Court for the Southern District of Ohio, Western Division, has been determined, and including any appeals therefrom, and this Court has reviewed the written transcript of said trial, and it is;

FURTHER ORDERED, that in the event any of the Applicants herein shall become Judgment Creditors of KDI Corporation as a result of the disposition of said law suit now pending in the United States District Court for the Southern District of Ohio, Western Division, and including any appeals therefrom, they shall be, and they hereby are, enjoined and stayed from execution upon said judgment, and from levying against KDI Corporation or any of its property, until such time as the Application to Determine Dischargeability, filed by the Applicants, has been determined by this Court and a final non-appealable Order has been entered thereon.

By Order of April 19, 1974, the District Court allowed intervention of 14 Verkamp Corporation shareholders, not including present claimant, as plaintiffs in the McIntyre suit. On February 3, 1975, the District Court denied class certification in the McIntyre suit. The District Court set the McIntyre suit for trial, first in early 1976, then moved it back to June or July, 1976. On March 9, 1976, this claimant moved to intervene as a plaintiff in the McIntyre suit. The District Court by communication dated June 17, 1976, stating that "the action is far advanced", indicated that it would deny the motion because the "movant simply waited too long, and it would be prejudicial to the Court and the defendants to allow the intervention at this late date." The McIntyre suit then came on for trial and on October 11, 1977, the District Court entered Findings of Fact and Conclusions of Law after trial. Further proceedings regarding damages occurred thereafter and on June 13, 1980, the District Court entered a final judgment which included within its scope the damage issue. A settlement was then effected in the case. On October 30, 1980, there was entered in the District Court a Stipulated Entry of Dismissal with Prejudice in Satisfaction of Judgment.

Turning now to claimant's motion to allow it to amend its proof of claim, claimant there seeks to amend Claim A by replacing paragraph 7 quoted above with the following:

7. That in *McIntyre v. KDI,* [406 F.Supp. 592] [1975], Civil Action No. 7801, United States District Court for the Southern District of Ohio, Western Division, Judge David S. Porter held that the value of all the shares, funds and other considerations which were transferred from all former shareholders of the Verkamp Corporation to the Debtor on or about April 7, 1970, was $1,110,771.79. Copies of Judge Porter's Order, dated March 20, 1980, and Findings of Facts and Conclusions of Law (on damages), also dated March 20, 1980, are attached hereto as Exhibits B and C, respectively. By reason of Judge Porter's determination, the Debtor was, at and before the filing of the Petition herein, and still is, justly and truly liable to the claimant for claimant's proportionate ownership interest in the Verkamp Corporation as of April 7, 1970, in the amount of $191,952, plus prejudgment interest of approximately $468,485 (calculated in accordance with 28 U.S.C.A. Sec.1961), plus reasonable attorney fees, costs, post-judgment interest and other reasonable expenses or relief as the Court may deem appropriate.

Further, claimant seeks to replace original paragraph 14 in Claim B with the following:

14. That by reason of the Orders attached hereto as Exhibits B and C entered by Judge Porter in said *McIntyre v. KDI,* the Debtor was, at and before the filing by it of the Petition herein, and still is, justly and truly liable to the Claimant for the total value of its stock in the amount of $191,952, plus prejudgment interest in the amount of $468,-485.22 (calculated in accordance with 28 U.S.C.A. Sec.1961), plus reasonable attorneys fees, costs, post-judgment interest and other reasonable expenses or relief as the court may deem appropriate; and by reason of the Findings of Fact and Conclusions of Law (on liability) dated October 11, 1977, copy attached as Exhibit D, this debt is not dischargeable because it was not provided for in the Debtor's Plan of Arrangement (see page 51 of Exhibit D).

This claimant, as did all the other former shareholders of the Verkamp Corporation, filed a proof of claim in the summer of 1972, in the case of this claimant, specifically on August 7, 1972. At the time that this claim was filed, bankruptcy rules had not yet been promulgated, and procedure in the bankruptcy court was regulated by the general orders in bankruptcy.

A concept already embedded in the bankruptcy law by that time was that a prudent claimant in a reorganization case should promptly file a proof of claim to preserve its right to participate in any distribution in the reorganization. At the time of the KDI bankruptcy filing, the McIntyre suit was pending. The putative class consisted of the former shareholders of the Verkamp Corporation of which this claimant's predecessor in interest clearly was one. The claim filed by claimant was drafted for the purpose of preserving the right to assert a claim in the bankruptcy dependent upon the outcome of the McIntyre case. Indeed, the claim here in issue was framed for the purpose of preserving all rights of this claimant, dependent on the outcome of the McIntyre suit. That is, Claim A was designed to preserve claimant's right to assert a claim under the merger agreement between Verkamp Corporation and the KDI subsidiary in the event that plaintiffs were unsuccessful in the McIntyre suit. Thus, the claim says that the debt was "to the shareholders of the former The Verkamp Corporation", was "in the amount of all the shares, funds and other considerations which were transferred from the shareholders of the former The Verkamp Corporation ... to KDI Verkamp Corporation" and was to secure to this claimant "his/her proportionate share of these considerations." Further, Claim A says that "the consideration of this liability is set out in [the] Plan of Merger Agreement." Finally, the intention of claimant in Claim A is evident from paragraph 7 where claimant says that "this claim is not an election against the rescission of the above identified Plan of Merger Agreement ... but is presented to maintain the rights of claimant pending the outcome of" the McIntyre

suit. From its very language, then, claimant's purpose in Claim A was to preserve its rights under the merger agreement in the event that plaintiffs were unsuccessful in securing rescission of the merger agreement by means of the McIntyre suit.

Claimant's purpose in Claim B of the present claim is equally clear. It deals with an alternative to an outcome of the McIntyre suit contemplated in Claim A. Claim B says that "the successful prosecution" of the McIntyre suit "will result in a Court ordering the debtor to direct its wholly-owned subsidiary KDI Verkamp Corporation to account and return all stock, funds and other consideration and property of value acquired by the merger to Verkamp Corporation." Further, in Claim B claimant says that if the plaintiffs in the McIntyre suit are successful in securing a judgment ordering rescission of the merger agreement, but if "the rescission procedure is incapable of being accomplished" an award of damages "to the *Class of Plaintiffs* for damages" (emphasis added) may occur, and "by reason of the foregoing" debtor may be liable to this claimant "for her proportionate share of the above sum." Thus, in Claim B this claimant seeks to preserve her right to assert a claim in the event that she, as a member of the plaintiff class in the McIntyre suit, may be entitled in the event of plaintiffs' success in that suit.

### THE MOTION TO AMEND

■ The original proof of claim filed by claimant on August 7, 1972 was consciously and deliberately framed to preserve the position of claimant pending the outcome of the McIntyre suit. Let us for the moment disregard the questions raised by the fact that after the denial of certification as a class action in the McIntyre suit by the District Court on February 3, 1975, this claimant could no longer assert that it was taking steps via that suit to reduce the contingent claim in its original proof of claim to an amount certain. Let us disregard further that this claimant certainly could not contend that it was a party to the McIntyre suit after intervention was denied June 17, 1976. Disregarding these facts

and accepting arguendo all of claimant's contentions that it has a right to rely upon the outcome of the McIntyre suit, the unarguable fact is that that suit was resolved in 1980. Claimant did nothing to make that resolution applicable to its claim in the KDI bankruptcy case until 1988 when it filed the present motion to amend.

Claimant has suggested no reason why it could not promptly after the conclusion of the McIntyre suit have filed the present motion to amend. It has made us aware that its first counsel withdrew in 1980, that successor counsel died in 1982 and that it is now represented by a third attorney. These facts, however, provide no excuse for failing to bring this matter further. Claimant has simply slept on its rights for a long enough period of time that it should be barred from now asserting those rights. This claimant cannot escape the thrust of Anglo–American law which prevails in the bankruptcy field as well as elsewhere, that it is the party who asserts a right which has the duty to press it, and loses that right if it delays inordinately.

■ We may look to F.R.Civ.P. 15 and cases decided thereunder in reaching a conclusion about whether justice should excuse delay on the part of a claimant in bankruptcy in seeking to amend its claim. Bankruptcy Rule 7015 incorporates F.R. Civ.P. 15 into bankruptcy practice. The determination is within the bankruptcy judge's discretion. See *In re AM International, Inc.,* 67 B.R. 79, 81 (N.D.Ill.1986); *In re Futuronics Corporation,* 23 B.R. 281, 283 (S.D.N.Y.1982). The essence of F.R.Civ.P. 15 for present purposes is that leave of court is required to permit the present amendment, and such leave "shall be freely given when justice so requires." We turn to cases decided under F.R.Civ.P. 15 bearing on the question of when leave should be granted.

■ While mere passage of time need not result in a denial of leave to amend pleadings, delay itself becomes fatal at some point in time. *Chitimacha Tribe of Louisiana v. Harry L. Laws Co.,* 690 F.2d 1157, 1163 (5th Cir.1982), cert. den. 464

U.S. 814 (1983). Undue delay is recognized as a significant factor in *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). In *Tenneco Resins, Inc. v. Reeves Bros., Inc.*, 752 F.2d 630 (Fed.Cir.1985), the District Court denied plaintiff's motion to amend its reply to a counterclaim. The original reply was filed in May, 1976. The District Court denied the motion to amend, saying that the movant had waited five years since the original complaint before seeking to inject new issues into the case and had foregone numerous opportunities to assert those issues.

In *Troxel Manufacturing Co. v. Schwinn Bicycle Co.*, 489 F.2d 968 (6th Cir.1973), cert. den. 416 U.S. 939, 94 S.Ct. 1942, 40 L.Ed.2d 290 (1974) a motion to amend was denied where the case had been pending for some two and one-half years. In denying the motion to amend, the court said that plaintiff's excuse for the delayed presentation, that it had misconceived the law, is not an adequate basis to excuse inaction. *Carter v. Super Markets General Corporation*, 684 F.2d 187 (1st Cir.1982) was an employment discrimination case where plaintiff asserted a Section 1981 claim. After suit was filed in 1975, nothing happened until defendant moved for summary judgment in 1981. Plaintiff then moved to amend her complaint by adding a Title VII claim and the District Court denied the motion. In commenting about the six-year delay before amendment was sought, the court observed that plaintiff attributed the delay to inadvertence and "clerical error". The Court of Appeals affirmed the District Court after finding that plaintiff's delay was almost entirely her own doing.

In the case now before us, claimant filed its claim in 1972. It might have sought to amend its claim when the District Court denied class certification in 1975. The foundation of the proof of claim, that claimant was party to the McIntyre suit, then was fundamentally changed. Or claimant could have taken action to amend its proof of claim when the District Court denied it the right to intervene in the McIntyre suit in 1976. It could have moved to amend its proof of claim after the conclusion of the McIntyre suit in 1980. It did none of those things, but waited until 1988 to file its motion. That is too long a period of delay and leads us to deny the motion to amend.

■ While we have cast our conclusion that claimant has lost its right to amend in terms of inordinate lapse of time, the ground is reinforced by that pressed by KDI, that claimant had a duty to liquidate its claim and failed to do so. It simply cannot be gainsaid that the original proof of claim filed by this claimant was unliquidated. At best, the filing reserved the right of claimant, to amend its original claim when the event contemplated in the claim occurred, despite an intervening time bar. That is, if the McIntyre suit had been certified as a class, and if claimant had remained a member of that class, when the suit was brought to a successful conclusion in 1980 claimant could have amended its original claim to comply with the requirement that a proper proof of claim be liquidated. Such a claimant, by sleeping on its rights, as has this claimant, should be precluded by the passage of time from amending its claim. This claimant, while not a party to the McIntyre suit, claims the benefit of it. Claimant could have done that beginning in 1980. However, it did nothing for eight years. It is too late now for amendment.

*In re Hot Springs Broadcasting, Inc.*, 210 F.Supp. 533 (W.D.Ark.1962) was a bankruptcy case wherein the District Court on appeal affirmed the order of the bankruptcy court which had disallowed the claim of petitioner because it was unliquidated. Finding that it was the creditor's duty to liquidate its claim upon obtaining instructions from the bankruptcy court as to the manner and time in which the claim should be liquidated, the claim was disallowed. The court found as well that liquidation at the time of the decision in 1962 would unduly delay the administration of the estate, the bankruptcy having been filed in 1960, the interval of inaction there being less than two years by contrast to the eight years of inaction in the case be-

fore us.[1]

Claimant attempts to distinguish *Hot Springs* by pointing out that *Hot Springs* did not involve a reorganization, but involved a liquidation case, the court observing that liquidation when sought would unduly delay the administration of the estate. Section 302 of the Bankruptcy Act, however, incorporates into Chapter XI practice, the presently pertinent portions of the Act dealing with liquidating bankruptcies. See 9 Remington on Bankruptcy (6th Ed.) Sec. 3609. Claimant further says that *Hot Springs* does not hold that failure to request instructions on liquidation is a ground for disallowance of a claim. Claimant again misses the mark, for *Hot Springs* makes specific reference to *Kessler v. Jefferson Storage Corp.*, 125 F.2d 108, 112 (6th Cir.1941) where the court said:

> In this regard, it is important to observe that in bankruptcy proceedings, the claimant has the burden of liquidating its claim as a condition precedent to its allowance. 11 U.S.C.A.Sec. 93, sub. d. Furthermore, the claimant in bankruptcy has the burden of proving its claim.

Claimant also seeks to escape the conclusion to which we have come by application of the doctrine of collateral estoppel. That is, claimant contends that its claim was in fact liquidated when the District Court decided the McIntyre case, because the same issue, the value of its claim, was in issue in that case.

We do not find this contention meritorious. While the District Court issued a decision and fixed damages in favor of plaintiffs in the McIntyre suit, the suit was in fact then dismissed after the parties reached a settlement. The settlement was reached during the time during which KDI could have appealed. The claimant now seeks a valuation of its claim on the basis

of collateral estoppel where it is not known what the actual parties to the litigation took. Clearly this would be unjust. It is not an appropriate case for application of the doctrine of collateral estoppel. *Associates Capital Services Corp. v. Loftin's Transfer and Storage Co.*, 554 F.2d 188 (5th Cir.1977); C. Wright, A. Miller and M. Cooper *Federal Practice and Procedure*, Section 4443 at p. 388. Also see *Avondale Shipyard, Inc. v. Insured Lloyd's*, 786 F.2d 1265, 1273 (5th Cir.1986).

## THE ORIGINAL CLAIM—WANT OF PROSECUTION

While the procedural creature known as a contested matter pursuant to contemporary B.R. 9014 was unknown at the time of the events here in question, when KDI filed its objection on May 23, 1973 to claimant's original proof of claim filed August 7, 1972, the framework for a legal controversy existed. That original claim contained within itself an excuse for the fact that it was imperfect in not stating a dollar amount.[2] It tacitly requested leave to complete its proof of claim upon the outcome of the McIntyre suit *to which it was then a party*. Upon the denial by the District Court of class certification on February 3, 1975, the basis for deferral of the completion of the proof of claim disappeared.

Claimant tried to remedy that disappearance by its motion to intervene in the McIntyre suit, but that initiative was defeated by the denial of intervention by the District Court on June 17, 1976. Beginning June 17, 1976, then, this claimant was obliged to take steps to cure the inadequacy of its proof of claim by some means other than that contemplated within the proof of claim itself. Claimant could have brought its own suit for rescission. It is not far from

1. Section 57(d) of the Bankruptcy Act of 1898, the legislation in effect when *Hot Springs* was decided as well as when present claimant's proof of claim was filed, provided that unliquidated claims were not to be allowed where liquidation would unduly delay the administration of the estate.

2. Section 57 of the Bankruptcy Act set forth the requirements of a proof of claim, including a requirement of conformity to the Official Forms, in order for the claim to warrant acceptance as prima facie evidence of validity and amount of the claim. Official Form 28 under the General Orders, in effect at the time of the filing of the claim, required a statement of the dollar amount of the claim.

the mark now to say that by its present position that it is entitled to the benefit of the outcome of the McIntyre suit, it is seeking to reverse the decision of the District Court denying intervention to claimant in that suit. Thus, it can be said, first, that the objection to the initial proof of claim must be sustained because that claim was unliquidated and therefore not allowable. Second, no effort has ever been made to this very day by this claimant to replace the basis for liquidation posited in its original claim, as a plaintiff in the McIntyre suit, with some other vehicle for liquidation. On this branch of our decision, time began to run in 1976, and, once again, since that time, claimant has taken no steps to cure the imperfection of its original proof of claim. It has slept upon its rights for too long now to be entitled to seek relief from the court.

It is a feature of our jurisprudence that one pursuing a remedy in the courts must do so with reasonable diligence. Sometimes reasonable diligence has fixed parameters, as in the case where statutes of limitations bar action by a claimant. Sometimes, however, reasonable diligence is determined by other considerations. The public interest in keeping courts available for the orderly processing of the claims of those seeking remedies, and the interest of courts in processing current matters, are among those considerations. The procedural structure governing this court provides for the dismissal of actions where a claimant does not exercise reasonable diligence. The expression implementing this policy is to be found at F.R.Civ.P. 41(b), made applicable in bankruptcy practice by B.R. 7041(b). That this rule applies to objections to claims is certain, for objections to claims are contested matters, procedures for which are provided by B.R. 9014. Bankruptcy Rule 9014 expressly makes B.R. 7041 applicable in contested matters.[3]

We deem the following cases to be here in point.

In *Moore v. Telfon Communications Corp.*, 589 F.2d 959 (9th Cir.1978), the plaintiff was a franchisor who brought an action against a franchisee to terminate the franchise agreement. The franchisee filed an anti-trust counterclaim. The court dismissed the counterclaim pursuant to F.R. Civ.P. 41(b). The court said:

> The plaintiff is charged with the exercise of "reasonable diligence" in prosecuting the action. *Anderson [v. Air West]*, supra [542 F.2d 522], at 524 [9th Cir.1976]; *States Steamship Co. v. Philippine Air Lines*, 426 F.2d 803, 804 (9th Cir.1970). During the six years from the filing of the counterclaim to its dismissal, Moore did little toward prosecuting the action and may even have impeded its progress by resisting defendant's attempts at discovery. Failure to prosecute diligently alone justifies dismissal, even where actual prejudice to the defendant is not shown.

*Washington v. Walker*, 734 F.2d 1237 (7th Cir.1984) was a civil rights action which had been dismissed in the District Court for want of prosecution after the case lay dormant for some four years. The court remarked that the plaintiffs, who on appeal were opposing the dismissal, conceded that the duty of moving the case to trial rests on the plaintiff, not the court. The case is also noteworthy because it supports the proposition that prejudice may be presumed from an unreasonable delay, so that it is not necessary that actual prejudice to a movant must be shown. The following from that case is also significant:

> ... Rule 41(b) serves not only to protect defendants but also to aid courts in keeping administrative control over their own dockets and to deter other litigants from engaging in similar dilatory behavior. *Stevens v. Greyhound Lines, Inc.*, 710 F.2d 1224, 1230–31 (7th Cir.1983). The

---

**3.** We are mindful that the claim presently under consideration was filed before the Bankruptcy Rules now in effect were promulgated. However, the Supreme Court of the United States in its order of April 25, 1983 adopting those Rules said that they were to be applied to all pending cases except to the extent their application in a pending case would not be feasible or would work injustice. We perceive no reason to exempt the present matter from application of those Rules.

Supreme Court did not require a demonstration of prejudice in *Link v. Wabash Railroad Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), the seminal case upholding a sua sponte dismissal for want of prosecution, and we will not require such a showing in this case.

*Bendix Aviation Corporation v. Glass*, 32 F.R.D. 375 (E.D.Pa.1962), aff'd, 314 F.2d 944 (3rd Cir.1963) cert. den. 375 U.S. 817, 84 S.Ct. 51, 11 L.Ed.2d 52 (1963), was a case in which a former employee in a counterclaim in a lawsuit sought damages for wrongful termination. The District Court had dismissed the counterclaim when no action had been taken to prosecute the counterclaim by counterclaimant during an 11–year period. On re-argument, the court said at p. 378:

> Taking all this in connection with the history of this 14 year old case, it seems to me that what I said in a previous opinion, "How soon should a party realize that the machinery of the court, which moves cases along for trial, is not working properly and that the trial of his case will in all probability be indefinitely deferred unless he does something about it?", is still fully applicable. The answer in this case is that the counterclaimant has waited too long.

Applying the foregoing cases to the facts now before us, we reach the conclusion that there having been 12 years of inaction by this claimant, it is now too late for it to press its claim.

Claimant's defense to our conclusion is to attack, asserting that it is not claimant which is chargeable with delay, but debtor. Claimant seeks to parlay a general fiduciary duty on the part of a Chapter XI bankruptcy debtor into a specific duty on the part of this debtor to procure an adjudication on its objection to claimant's proof of claim, and claimant devotes considerable space in its memoranda to this thesis. To deal with all that claimant contends on this score would further delay this decision.

Suffice it to say that claimant's position ignores the nature of the claim which was filed. The proof of claim as filed was certainly unliquidated, was stated in the alternative, and by its very terms sought a deferral of its consideration at least until the McIntyre suit was concluded. As we have indicated earlier, it did not meet the criteria of Section 57(a) of the Bankruptcy Act to qualify as presumptively valid, a presumption which claimant mistakenly relies on in its argument. Further, claimant's reliance on cases dealing with burden of proof once a matter is before the court for hearing miss the mark as to what is before us, and are irrelevant. In the end, we are not persuaded by the arguments of claimant, because we believe it to be the paramount duty of the one seeking a remedy to press his claim, and claimant cannot escape that responsibility by pointing the finger at the defendant or the court.

We make here a final determination of claimant's motion to amend its claim, and of its right to press its claim altogether, though this matter had been proceeding toward an evidentiary hearing on the issue of timeliness. A final disposition without further proceedings is appropriate, first, because it is fair to regard the cross-motions for summary judgment as extending to the timeliness issues, and, second, because not just the cross-motions for summary judgment are before us, but the fully briefed motion to amend is before us as well.

Claimant's motion to amend will be denied and claimant's proof of claim will be dismissed.