**In re LEE WAY HOLDING COMPANY, Debtor.**

**Bankruptcy No. 2–85–00661.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Feb. 22, 1995.

Frederick M. Luper, Chapter 11 Trustee, Luper, Wolinetz, Sheriff & Neidenthal, Columbus, OH.

Robert J. Sidman, Vorys, Sater, Seymour & Pease, Columbus, OH, for Official Unsecured Creditors' Committee.

Gordon W. Johnston, Bricker & Eckler, Columbus, OH, for Unisys Corp.

## OPINION AND DECISION ON MOTIONS FOR SUMMARY JUDGMENT

DONALD E. CALHOUN, Jr., Bankruptcy Judge.

This matter is before the Court on the Motions for Summary Judgment filed by

Unisys Corporation, fka Sperry Univac Division of Sperry Corp. ("Unisys") and Frederick M. Luper, Chapter 11 Trustee of the Lee Way Holding Company bankruptcy estate ("Trustee"), concerning the Trustee's objection to claim number 5951 filed by Unisys.

This Court is vested with jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

## I. *Findings of Fact*

On May 27, 1994, the parties filed Stipulations of Fact ("Stip. of Facts") with respect to the Trustee's objection to Unisys' claim. The Court, by this reference, adopts those facts as stipulated by the parties. Prior to the filing of this Chapter 11 proceeding, Lee Way Holding Company ("Debtor"), and Unisys entered into a number of Lease and Service Agreements. Two relevant Lease and Service Agreements were still in effect on March 7, 1985, the date of Debtor's bankruptcy filing ("the Leases"). Pursuant to the terms of the Leases, Unisys leased computer equipment to Debtor, and Unisys agreed to perform maintenance services for the leased equipment (Stip. of Facts ¶¶ 1–5).

Debtor used the leased computer equipment for approximately eight and one-half months after the Chapter 11 filing. Debtor made payments to Unisys totaling $204,704.85 in partial consideration of Debtor's continued use of the leased equipment. On August 16, 1985, Unisys filed a Motion for Order Directing Debtor to Assume or Reject Unexpired Leases and to Provide Adequate Protection ("Motion to Assume or Reject"). An Agreed Order resolving the Motion to Assume or Reject was entered by the Bankruptcy Court on September 27, 1985, providing that the Leases would be deemed rejected unless assumed on or before October 17, 1985. Debtor failed to assume the Leases by October 17, 1985, and the Leases were thereby deemed rejected. Debtor continued to use the leased equipment after October 17, 1985, and continued to make payments in partial consideration of such continued use, until November 20, 1985, when it surrendered the equipment. Unisys filed an administrative claim for Debtor's post-petition use of the leased equipment. On December 19, 1986, the Bankruptcy Court entered an Order allowing Unisys an administrative claim for $288,678.29 (Stip. of Facts ¶¶ 6–14).

By Order entered March 13, 1985, the Court appointed an Official Creditors' Committee. The Committee included Sperry Corporation, one of Debtor's scheduled creditors (Stip. of Facts ¶ 19). Unisys is the resulting entity of a merger between Sperry Corporation and Burroughs Corporation (Stip. of Facts ¶ 3). Unisys formally accepted the appointment to the Creditors' Committee in this case on March 28, 1985 (Stip. of Facts ¶ 18). The Bankruptcy Court entered an Order ("Initial Bar Date Order") on April 24, 1985, that established August 15, 1985 as the last date for filing proofs of claim in this Chapter 11 case ("Initial Bar Date") (Stip. of Facts ¶ 20). On August 14, 1985, Unisys filed an unsecured non-priority pre-petition claim in the sum of $272,861.11 ("Original Claim"). The Original Claim, comprised of several hundred pages, arose from Debtor's failure to pay rent, maintenance charges and taxes under the terms of the Leases (Stip. of Facts ¶ 21). On August 15, 1985, the Official Creditors' Committee filed a Motion for Extension of Bar Date, which was granted, and the Initial Bar Date was extended to December 15, 1985 ("Amended Bar Date") (Stip. of Facts ¶ 22). Unisys was extremely active during the course of this Chapter 11 proceeding (see, e.g., Stip. of Facts ¶¶ 8, 12, 15, 18, 21 and 26). On September 13, 1993, nearly eight years after the Amended Bar Date, Unisys filed an unsecured non-priority claim in the sum of $3,505,559.11 ("Subsequent Claim") based primarily on alleged lease rejection damages (Stip. of Facts ¶ 26).

Debtor's First Amended Chapter 11 Plan was filed on July 13, 1993 and confirmed by the Bankruptcy Court by an Order entered October 20, 1993. By Order entered January 11, 1994, the Bankruptcy Court approved Debtor's Motion For Authority to Pay Partial Distribution to Unsecured Creditors, resulting in a distribution totalling $2,794,984.92 (Stip. of Facts ¶¶ 28–30). Unisys contends that the Subsequent Claim is an

amendment of the Original Claim. The Trustee argues that the Subsequent Claim is a new claim filed after the bar date, and should be disallowed as untimely.

## II. Conclusions of Law

Federal Rule of Bankruptcy Procedure 7056, adopts Rule 56 of the Federal Rules of Civil Procedure:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c).

"[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

In its Motion for Summary Judgment, Unisys contends that the Court should allow the Subsequent Claim either as an amendment to the Original Claim, or an amendment to an informal proof of claim. Unisys also argues that if the Subsequent Claim is ruled to be a new claim, it is not subject to an established bar date. The Trustee asserts that the Subsequent Claim is an untimely new claim. The Trustee also argues that if the Subsequent Claim is considered an amendment, Unisys should be estopped from asserting the claim.

The Stipulation of Facts submitted by the parties provides the Court with sufficient undisputed facts to allow for a ruling under Fed.R.Bankr.P. 7056.

### A. Unisys' Subsequent Claim Is Not An Amendment To The Original Claim

■ Initially, the Court notes that Unisys should have obtained leave of Court to amend its claim. *In re Outdoor Sports Headquarters, Inc.,* 161 B.R. 414, 421 (Bankr.S.D.Ohio 1993). Despite the failure of Unisys to seek leave to amend its Original Claim, the Court will not elevate form over substance, and will address the merits of whether the Subsequent Claim should be allowed as an amendment. *Outdoor Sports,* 161 B.R. at 421. Determining whether to permit an amendment to a timely proof of claim is within the discretion of the Court. Courts have developed a two-part test in making this determination: (1) the Court must determine whether the amendment reasonably relates to a timely filed claim or whether it is merely an attempt to file a new claim; and (2) the Court must determine whether allowing an amendment would be equitable under the circumstances of the case. *Outdoor Sports,* 161 B.R. at 421.

■ With respect to the first prong of the test, an amendment to a proof of claim should be allowed if it cures a defect in the original claim, describes a claim with greater particularity, or pleads a new theory of recovery based on the facts of the original claim. *In re Pyramid Building Co.,* 87 B.R. 38, 40 (Bankr.N.D.Ohio 1988) [citing *United States v. International Horizons, Inc.,* 751 F.2d 1213, 1216 (11th Cir.1985)]; *In re Chavis,* 160 B.R. 804 (Bankr.S.D.Ohio 1993). Post bar date amendments to claims "must be scrutinized to assure that there [is] no attempt to file a new claim under the guise of an amendment." *International Horizons,* 751 F.2d at 1216; *Chavis,* 160 B.R. at 805; *In re First Truck Lines,* 141 B.R. 621, 629 (Bankr.S.D.Ohio 1992), *aff'd,* No. C–3–92–304 (S.D.Ohio Sept. 21, 1993); *In re Parsons,* 135 B.R. 283, 284 (Bankr.S.D.Ohio 1991). "Amendment is not permitted as a guise for filing untimely claims." *Pyramid Building,* 87 B.R. at 40.

■ Under the second prong of the test for permitting an amendment to a timely-filed proof of claim, the Court must perform an equitable analysis, considering factors such as:

(1) whether there is undue prejudice to an opposing party;

(2) whether other claimants might be harmed or prejudiced;

(3) whether there is justification for the inability to file the amended claim at the time the original claim is filed;

(4) whether there is bad faith or dilatory behavior on the part of the claimant; and

(5) whether other creditors would receive a windfall if the amendment was not allowed.

*First Truck Lines,* 141 B.R. at 629–30; *Parsons,* 135 B.R. at 285; and *Outdoor Sports,* 161 B.R. at 421.

This Court finds that the Subsequent Claim neither cures a defect in the Original Claim, nor describes the Original Claim with greater particularity. A review of the Original Claim clearly shows that claim to be complete, and there is no defect to be cured. The Original Claim specifically relates to actual default under the Leases, and the resulting claim for rent, maintenance charges and taxes. The Original Claim represented the actual and liquidated default of Lee Way under the Leases during the time that Lee Way was in possession of the leased equipment. There was certainly the opportunity for Unisys to fully or partially mitigate any potential lease rejection damages. As such, the Original Claim as filed was not "defective." Similarly, the Original Claim was not improperly described. Indeed, as stated herein, the Claim was fully and accurately documented. This is not a case where the creditor was required to add detail to the claim to avoid the possibility that the claim would be denied as being insufficiently documented.

The only remaining question is whether the Subsequent Claim asserts a new theory of recovery based on the facts of the Original Claim, or if Unisys is attempting to file a new claim under the guise of an amendment to the Original Claim. The Court in *Matter of Interco, Inc.,* 149 B.R. 934 (Bankr.E.D.Mo. 1993), held that "claims for rejection of lease damages pursuant to 11 U.S.C. § 502(b)(6) . . . are distinctly different from those timely filed claims for rent, maintenance and taxes. The late proofs of claim assert damages under different sections of the Bankruptcy Code and allege much greater damage amounts." *Interco,* 149 B.R. at 938. As such, the *Interco* court refused to permit late filed claims for lease rejection damages to be construed as amendments to timely filed claims for rent, taxes and maintenance. *Interco,* 149 B.R. at 938.

While a new theory of recovery is asserted in the Subsequent Claim, it is not based on the facts underlying the Original Claim. The Original Claim was based on rent, maintenance charges and taxes due under the terms of the Leases (Stip. of Fact ¶ 21). The Subsequent Claim was based on Debtor's rejection of the Leases, and allegations of resulting damage for the period of time remaining under the Leases during which Debtor was no longer in possession of the leased equipment (Stip. of Fact ¶ 26). Unisys filed the Original Claim for $272,861.11, while the Subsequent Claim was filed for $3,505,559.11. Unisys does not plead a new theory of recovery based on the same facts of the Original Claim, and does not allege similar damage amounts in the Subsequent Claim.

■■■■ An analysis of the tests set forth above, and the legal analysis in *Interco* weigh heavily against Unisys' argument that the Subsequent Claim is an amendment. This is a fact intensive inquiry for the Court. "Disposition of a motion to amend a proof of claim falls within the sound discretion of the bankruptcy court." *Stavriotis v. U.S. (In re Stavriotis),* 977 F.2d 1202, 1204 (7th Cir. 1992). To allow an amendment, "the second claim should not only be of the same nature as the first, but also within the amount to which the first claim provided notice." *In re AM International, Inc.,* 67 B.R. 79, 82 (N.D.Ill.1986); *Chavis,* 160 B.R. at 805; *International Horizons,* 751 F.2d at 1217–18; *Stavriotis,* 977 F.2d at 1205.

The creditor in *Stavriotis* (the IRS) attempted to amend its proof of claim five months after the bar date had lapsed, to increase the amount of its claim from $11,-132.93 to $2,435,078.39. The debtor objected to the IRS' amended claim on procedural and substantive grounds. The bankruptcy court refused to permit the amendment on the grounds that the claims "were dissimilar in kind and amount." *Stavriotis,* 977 F.2d at 1203. The Appellate Court held that it was not an abuse of discretion to disallow the

amendment due to the "dramatic increase in the claim amount which came as an unfair surprise to other creditors and perhaps the debtor." *Stavriotis,* 977 F.2d at 1204. The *Stavriotis* Court noted other factors that persuaded it to deny the IRS' attempt to amend its proof of claim, including the fact that the IRS' amendment would prejudice other creditors who were unaware that the IRS had an ongoing audit that could result in an increased claim amount. Further, the IRS offered no excuse or justification for the delay in amending its claim. *Stavriotis,* 977 F.2d at 1205–06.

The factors relied on by the *Stavriotis* Court are applicable here. The Original Claim, filed on August 14, 1985, was for $272,861.11. On September 13, 1993, Unisys filed an amendment to the Original Claim in the amount of $3,505,559.11. Clearly, Unisys' Subsequent claim is not within an amount for which the Original Claim provided notice. This dramatic increase comes as an unfair surprise to the Trustee and creditors in this case, and would have a material effect on the dividend paid to unsecured creditors under the plan of reorganization. Unisys provided no excuse or justification for its eight year delay. Therefore, consistent with the analysis in *Stavriotis,* the Subsequent Claim will not be considered an amendment to the Original Claim because of the substantial disparity between the two claims, the prejudicial effect on the Trustee and other creditors, and the lack of justification for Unisys' delay.

"Leave to amend [claims] should be freely granted early in a case, but passing milestones in the litigation make amendment less appropriate. One milestone of particular significance in bankruptcy is the bar date ... Confirmation of the plan of reorganization is a second milestone ... Once that milestone has been reached, further changes should be allowed only for compelling reasons." *Holstein v. Brill,* 987 F.2d 1268, 1270 (7th Cir. 1993). Post confirmation claims amendments could jeopardize feasibility of the plan, altering the distributions to remaining creditors, and disrupting the orderly process of adjudication. *Holstein,* 987 F.2d at 1270–71. All of these factors weigh against allowing the Subsequent Claim as an amendment to the Original Claim.

Bankruptcy Rule 7015 incorporates Fed. R.Civ.P. 15 in adversary proceedings. Bankruptcy Rule 9014 permits the court, in its discretion, to extend Rule 7015 to contested matters such as claims objections. *Stavriotis,* 977 F.2d at 1204. Fed.R.Civ.P. 15(a) indicates that a court should freely grant leave to amend a party's pleading when justice so requires. Here, the interest of justice weighs against allowing Unisys to amend the Original Claim. "The season for stating the amount of a debt is before the confirmation of the plan of reorganization." *Holstein,* 987 F.2d at 1271. Allowing a creditor to file a claim after confirmation of the plan would be inequitable. *In re Decko Products, Inc.,* 73 B.R. 275, 276 (Bankr.N.D.Ohio 1987) (allowing a creditor to file a proof of claim after confirmation of the plan and 23 months after receiving notice of the bankruptcy, reducing the amount available to other creditors, would be inequitable). The Subsequent Claim was filed nearly eight years after the Amended Bar Date, two months after the plan was proposed, and on the eve of the confirmation hearing. Not only have priority and administrative claims been paid by the Trustee, but a substantial distribution has already been paid. The Court finds that allowing Unisys' Subsequent Claim as an amendment would result in unfair surprise and would be inequitable to unsecured creditors that filed timely claims. Simply put, Unisys missed the season to amend its claim.

Unisys relies on *Outdoor Sports,* where the court allowed a creditor to amend its claim ten months after the bar date and after confirmation of the plan. The amended proof of claim added a prepayment penalty not included in the original proof of claim. "The Prepayment Amount is grounded in the same right to payment as the [original claim]. Therefore, the Amended Proof of Claim merely increases the amount of the claim grounded in the right to payment set forth in the Original Proof of Claim and does not assert a new claim." *Outdoor Sports,* 161 B.R. at 421–22. The amended proof of claim in *Outdoor Sports* was filed less than one year after the original claim, and shortly

after the creditor learned of facts which made the amendment necessary. The court found that the creditor "was not dilatory in filing the Amended Proof of Claim", and equitable considerations did not preclude allowing the amendment. *Outdoor Sports,* 161 B.R. at 423.

*Outdoor Sports* is distinguishable for several reasons. Here, Unisys waited almost eight years before filing its "amendment". Unisys' actions were dilatory and unjustifiable. If unsure as to the amount of alleged lease rejection damages, Unisys should have filed a claim in an unliquidated amount, pending a determination of the actual rejection damages, if any. Unisys could have had its rejection damage claim estimated for voting on Debtor's plan of reorganization. 11 U.S.C. § 502(c). Failing to file the Subsequent Claim until eight years after the Amended Bar Date compels this court to deny the attempted amendment on equitable grounds. Surely, the Trustee and other creditors were entitled to rely on an eight year silence as evidence that no lease rejection claim would be filed. Other claimants would be harmed by the late-filed amendment due to its substantial nature, and the distributions for timely filed claimants would be significantly reduced (see Affidavit of Harold Slaughter attached to Trustee's Motion for Summary Judgment). The dilatory conduct of Unisys has delayed the administration and distribution of this estate, and has hampered the Trustee's efforts to close this case. Due to the equitable considerations in the present case, Unisys' reliance on *Outdoor Sports* is not persuasive.

The court in *Estate of Verkamp v. KDI Corp. (In re KDI Corp.),* 119 B.R. 594, 599 (Bankr.S.D.Ohio 1990), held that "[w]hile mere passage of time need not result in a denial of leave to amend pleadings, delay itself becomes fatal at some point in time." *See also Tenneco Resins, Inc. v. Reeves Bros. Inc.,* 752 F.2d 630 (Fed.Cir.1985) (Court denied motion to amend reply to a counterclaim where the movant did not act for five years, having foregone numerous opportunities to assert relevant issues); *Troxel Manufacturing Co. v. Schwinn Bicycle Co.,* 489 F.2d 968 (6th Cir.1973), *cert. den.,* 416 U.S. 939, 94 S.Ct. 1942, 40 L.Ed.2d 290 (1974) (Court

denied motion to amend pleadings to set forth an alternative theory of recovery where the case had been pending for two and one-half years); *Carter v. Super Markets General Corporation,* 684 F.2d 187 (1st Cir.1982) (Court denied motion to amend after six year delay attributable to inadvertence and clerical error); *see also* Fed.R.Civ.P. 41(b); and Fed.R.Bankr.P. 7041(b). At some point, a claimant "by sleeping on its rights ... should be precluded by the passage of time from amending its claim." *KDI,* 119 B.R. at 600.

In the present case the Amended Bar Date was December 15, 1985. Unisys filed the Original Claim for rent, maintenance charges and taxes on August 14, 1985. More than eight years later, on September 13, 1993, Unisys filed a new proof of claim as an amendment to the Original Claim. Factors such as Unisys' activity in this case, its position on the creditors committee, the length of the delay, the size of the Subsequent Claim, and the resulting prejudice dissuade this Court from considering the Subsequent Claim to be an amendment to the Original Claim. In arriving at this conclusion, the Court has performed an equitable analysis of the facts at issue. As set forth above, the Court has determined that allowing the amendment would cause undue prejudice to the Trustee in his administration of the estate, as well as to creditors filing timely claims. There has been absolutely no justification shown for the inability of Unisys to file the Amended Claim at the time the Original Claim was filed, even in an unliquidated amount. There is no question that Unisys was dilatory in its prosecution of the Subsequent Claim. Based on the foregoing analysis, the Court has concluded that the amendment does not reasonably relate to the timely filed Original Claim, but is merely an attempt to file a new claim after the bar date. Under the circumstances of this case, it would not be equitable to allow the amendment. The Subsequent Claim is therefore a new claim filed after the bar date, and will be disallowed.

**B.** *The Subsequent Claim Is Not An Amendment Of An Informal Proof Of Claim*

■ Unisys alternatively argues that the Subsequent Claim is an amendment to an

informal proof of claim, citing *In re Dietz,* 136 B.R. 459 (Bankr.E.D.Mich.1992). Informal proofs of claim are recognized because bankruptcy courts are courts of equity, and must assure that substance does not give way to form, and that technical considerations do not prevent substantial justice from being done. *Grubb v. Pittsburgh Nat'l Bank (In re Grubb),* 169 B.R. 341, 348 (Bankr. W.D.Pa.1994); *In re Harper,* 138 B.R. 229, 237 (Bankr.N.D.Ind.1991) [citing *Pepper v. Litton,* 308 U.S. 295, 305, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939)]. In *Dietz,* a creditor filed a proof of claim six days after the bar date. The creditor argued that its late filing amended an informal proof of claim filed with the court prior to the claims bar date. The "informal proof of claim" was a letter mailed to the trustee and the bankruptcy court clerk, in which the creditor stated that it was owed over $20,000. *Dietz,* 136 B.R. at 461. The court adopted a five-part test addressing the elements of an informal proof of claim:

1) the proof of claim must be in writing;

2) the writing must contain a demand by the creditor on the debtor's estate;

3) the writing must express an intent to hold the debtor liable for the debt;

4) the proof of claim must be filed with the Bankruptcy Court; and

5) based on the facts of the case, it would be equitable to allow the amendment.

*Dietz,* 136 B.R. at 463 (citations omitted).

 Unisys alleges that its Motion to Assume or Reject Leases satisfies the requirements of an informal proof of claim. "A written document filed with the bankruptcy court which contains a demand on the estate or otherwise expresses an intent to hold the debtor liable for an alleged debt will serve as an informal proof of claim." *Dietz,* 136 B.R. at 464. The informal claim must "apprise the court of the existence, nature and amount of the claim (if ascertainable) and make clear the claimant's intention to hold the debtor liable for the claim." *In re Charter Co.,* 876 F.2d 861, 863 (11th Cir.1989). An informal proof of claim must, at a minimum, furnish the same information as contained in a formal claim. "This includes the fact that claimant has what it believes to be a legal claim for money owing." *International Horizons,* 751 F.2d at 1218.

 Unisys' Motion to Assume or Reject set forth neither the nature nor amount of the Subsequent Claim, but merely requested assumption of the Leases by a date certain. The Motion to Assume or Reject did not include a demand on the estate or express an intent to hold the Debtor liable for rejection damages as required by *Dietz* and *International Horizons,* and did not give notice of the existence, nature or amount of the alleged lease rejection claim, as required by *Charter.* See also *First Interstate Bank of Denver, N.A. v. Connolly (In re Anchor Resources, Inc.),* 139 B.R. 954 (D.Colo.1992). In addition, that motion was filed more than eight years before the Subsequent Claim. Unisys argues that the Trustee had some duty to analyze claims to determine if additional amounts might be owing. This is an impossible burden to place on the Trustee, whose duty is to the estate, not to the negligent creditor. Unisys' claim was hundreds of pages long and related to seven leases, only two of which are now relevant. Putting such a burden on the Trustee would invariably result in tremendous additional costs of administration at the expense of the estate as a whole, but without any resulting benefit to the estate.

Finally, the speculative nature of Unisys' rejection damages weighs against the Motion to Assume or Reject being deemed an informal claim. Unisys may have fully or partially mitigated any lease rejection damages by re-leasing or selling the equipment, thereby reducing or eliminating its rejection damages. The Motion to Assume or Reject is not an informal claim under the requirements set forth in *Charter* and *Dietz.* The equities here do not support recognizing an informal proof of claim. *AM International,* 67 B.R. at 82 (Before allowing a late filed "informal claim" the party seeking equity should be without fault as to the late filing). As such, the Subsequent Claim cannot be considered an amendment to an informal proof of claim.

## C. *The Subsequent Claim Is Subject To The Established Bar Date*

 Even if the Subsequent Claim is deemed a new claim, Unisys argues that it is not subject to an established bar date. Fed. R.Bankr.P. 3003(c)(3) provides:

*Time for Filing.* The court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed. Notwithstanding the expiration of such time, a proof of claim may be filed to the extent and under the conditions stated in Rule 3002(c)(2), (c)(3), and (c)(4).

Under Fed.R.Bankr.P. 3002(c)(4):

A claim arising from the rejection of an executory contract or unexpired lease of the debtor may be filed within such time as the court may direct.

Unisys argues that absent a specific bar date for lease rejection damage claims, the Subsequent Claim cannot be untimely. The Advisory Committee Note to Rule 3002 contradicts this argument:

Paragraph (4) is derived from former chapter rules ... In light of the reduced time it is necessary that a party with a claim arising from the rejection of an executory contract have sufficient time to file that claim. This clause allows the court to fix an appropriate time.

Rule 3002(c)(4) was intended to provide creditors sufficient time to file lease rejection claims. If there is insufficient time to file the claim prior to the regular bar date, the court may fix a later date. In many cases, the relevant lease may not be rejected until after the regular bar date has expired. Here, Unisys had ample time to file its lease rejection damage claim prior to the Amended Bar Date. Unisys never requested the Court to set a deadline for filing lease rejection damage claims, or to otherwise extend the deadline for filing claims, thereby risking that the Court would not permit a claim asserted after the bar date. *See 8 Collier on Bankruptcy,* ¶ 3002.05[5], p. 3002–18 (15th ed. 1990).

On August 15, 1985 the Official Creditors' Committee filed the Motion for Extension of Bar Date. The Court granted the motion and the bar date was moved to December 15, 1985. On August 16, 1985 Unisys filed the Motion to Assume or Reject. On September 27, 1985 the Agreed Order was entered requiring Debtor to assume the Leases on or before October 17, 1985, or the Leases would be deemed rejected. Unisys had almost two months between the date the Leases were deemed rejected and the Amended Bar Date to file an appropriate lease rejection claim. Rule 3002(c)(4) does not require, and the Court finds it inappropriate to fix a later bar date in this case.

## D. *The Subsequent Claim Is Untimely And Will Be Disallowed*

The Court has determined that the Subsequent Claim is a new claim filed after the Amended Bar Date. The Subsequent Claim did not bear a reasonable relationship to the Original Claim, but constituted an attempt to file a new claim under the guise of an amendment; and under the equities of this case, the Court will not recognize the Subsequent Claim as an amendment. *Outdoor Sports,* 161 B.R. at 421. Although the issue was not adequately raised by Unisys, the question remains as to whether the untimely Subsequent Claim can be allowed based on excusable neglect.

In *In re Wm. B. Wilson Mfg. Co.,* 59 B.R. 535 (Bankr.W.D.Tex.1986), the court allowed a creditor to file a proof of claim as an amendment to a timely "informal proof of claim" based on "excusable neglect." The court in *Wilson Mfg.* stated that excusable neglect may exist if the failure to timely perform a duty, such as compliance with the bar date, was due to circumstances beyond the party's reasonable control (excusable neglect existed when the creditor did not receive notice of the claims bar date). *Wilson Mfg.,* 59 B.R. at 537, 538.

In *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership,* —— U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), the Supreme Court broadened the definition of excusable neglect. In *Pioneer,* the court noted that the "excusable neglect" standard of Fed.R.Bankr.P. 9006(b)(1) governs late filings of proofs of claim in Chapter 11 cases, but not in Chapter 7 cases based on the different policies of the

two chapters. "Whereas the aim of a Chapter 7 liquidation is the prompt closure and distribution of the debtor's estate, Chapter 11 provides for reorganization with the aim of rehabilitating the debtor and avoiding forfeitures by creditors." *Pioneer,* 113 S.Ct. at 1495. Bankruptcy courts have broad equity powers to balance the interests of the relevant parties, guided by the goal of ensuring successful reorganization in Chapter 11 proceedings. "This context suggests that Rule 9006's allowance for late filings due to 'excusable neglect' entails a correspondingly equitable inquiry." *Pioneer,* 113 S.Ct. at 1495. The *Pioneer* Court concluded that "enlargement of prescribed time periods under the 'excusable neglect' standard of Rule 9006(b)(1) is not limited to situations where the failure to timely file is due to circumstances beyond the control of the filer." *Pioneer,* 113 S.Ct. at 1496. The determination of whether a party's neglect is excusable is "an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include ... the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer,* 113 S.Ct. at 1498.

 "The burden of proving 'excusable neglect' is on the party seeking to be relieved of the time bar." *In re Nutri\*Bevco, Inc.,* 117 B.R. 771, 785 (Bankr.S.D.N.Y.1990). Considering all of the relevant circumstances here, the Subsequent Claim will not be allowed based on excusable neglect. Unisys' unreasonable eight-year delay in filing the Subsequent Claim, the prejudicial effect of the claim, the substantial impact on the administration and distribution of the estate, and Unisys' failure to adequately explain the delay support the Court's ruling. Unisys has provided no justification for its failure to file a timely amendment. The Trustee and creditors are entitled to a level of certainty as to the potential claims pool to allow for case administration and plan projections. If allowed, the Subsequent Claim would significantly reduce the dividend to timely filed claims. Under the circumstances of this case, Unisys has not met its burden of proving "excusable neglect". The length of the delay was outside the parameters for "excusable neglect", and has delayed and hampered the Trustee's administration of this estate, including the distribution to creditors. Unisys has failed to set forth any reason for the delay, despite the fact that filing a timely amendment was clearly within its control.

Unisys had many opportunities to file its lease rejection claim, but failed to do so within a reasonable period of time. Based on all of the circumstances of this case, the Court cannot conclude that Unisys acted in good faith in filing the Subsequent Claim after an eight-year delay and on the eve of plan confirmation. Whether the failure to properly file this claim was caused by Unisys or its counsel is irrelevant. The Supreme Court has noted that clients may be held accountable for the acts and omissions of their attorneys. *See Pioneer,* —— U.S. at ——, 113 S.Ct. at 1499. The fact that this is a liquidating Chapter 11 proceeding under the supervision of the Chapter 11 Trustee also supports the Court's conclusion. Although this is technically a Chapter 11 proceeding, the aim of the "reorganization" was an orderly and expeditious liquidation and distribution of the Debtor's estate. In weighing the equities of the case, and based on the differing policies of an actual reorganization and a liquidation under the supervision of a Chapter 11 Trustee, the Court finds that Unisys has failed to meet its burden of proving "excusable neglect." *See Pioneer,* 113 S.Ct. at 1495.

 Since the Subsequent Claim is subject to the established bar date, the claim was untimely, and will be disallowed. The Leases were deemed rejected on October 17, 1985. If Unisys was unsure as to the amount of its claim for lease rejection damages, it should have taken advantage of § 502(c) of the Bankruptcy Code, which provides for the filing of estimated claims. A creditor who fails to file a timely claim or make a request for an extension of time to file a claim may not file a late claim and participate in distribution from the estate. *Internal Revenue Service v. Kolstad (In re Kolstad),* 928 F.2d

**986**

171, 173 (5th Cir.1991), *cert. den.*, 502 U.S. 958, 112 S.Ct. 419, 116 L.Ed.2d 439 (1991).

Unisys does not argue that it failed to receive notice of the bankruptcy filing or bar date. Unisys even received the Court's Notice of Order Establishing Deadline for Filing of Administrative Claims dated September 28, 1987. Again, Unisys failed to take action to preserve or assert its lease rejection damage claim. Accordingly, *U.S. v. Cardinal Mines Supply, Inc.*, 916 F.2d 1087 (6th Cir.1990) and *Internal Revenue Service v. Century Boat Company (In re Century Boat Company)*, 986 F.2d 154 (6th Cir.1993) are distinguishable. *Chavis*, 160 B.R. at 806. The court in *Internal Revenue Service v. Messics (In re Messics)*, 159 B.R. 803 (Bankr.N.D.Ohio 1993), stated that "both the opinion and dissent in *Pioneer* take for granted that untimely claims will be barred in chapter 11 [absent] excusable neglect ... It seems unlikely that the [Supreme] Court would have struggled so to determine whether the late filing at issue was due to excusable neglect if late filing were not perceived a bar to allowance." *Messics*, 159 B.R. at 809–10.

■ Several courts have disallowed claims filed after the bar date in chapter 13 cases. In *In re Zimmerman*, 156 B.R. 192 (Bankr.W.D.Mich.1993) the court rejected the *Hausladen*[1] court's controversial interpretation of 11 U.S.C. § 502 and held that late filed claims in chapter 13 cases may be disallowed. *Zimmerman*, 156 B.R. at 195. *See also Messics, supra; Grubb, supra; Chavis, supra; In re Friesenhahn*, 169 B.R. 615 (Bankr.W.D.Texas 1994); *In re Stoiber*, 160 B.R. 307 (Bankr.N.D.Ohio 1993); *In re Bailey*, 151 B.R. 28 (Bankr.N.D.N.Y.1993). The *Zimmerman* court came to its conclusion by analyzing the interrelation of 11 U.S.C. §§ 501, 502 and Fed.R.Bankr.P. 3002. The court stated that "a prerequisite [for a claim] being 'deemed allowed' under § 502 is filing under § 501 ... The merits of a claim will be analyzed under § 502 only if the claim meets § 501's requirements." *Zimmerman*, 156 B.R. at 195. While § 501 is silent as to the time limit for filing claims, that void is

filled by Fed.R.Bankr.P. 3002. *Zimmerman*, 156 B.R. at 196. Fed.R.Bankr.P. 3002 makes timely filing a prerequisite to allowance. *Zimmerman*, 156 B.R. at 198. Therefore, under a thorough legal analysis of 11 U.S.C. §§ 501, 502 and Fed.R.Bankr.P. 3002, if a creditor fails to timely file its claim under § 501, the claim will not be allowed pursuant to § 502. *Zimmerman*, 156 B.R. at 198; *Stoiber*, 160 B.R. at 310; *Bailey*, 151 B.R. at 32.

Disallowance of a claim due to untimely filing was codified in 1994 by new sub-section (b)(9) to 11 U.S.C. § 502, thereby overruling *Hausladen* and its progeny. Section 502(b)(9) states that a claim shall not be allowed if "proof of such claim is not timely filed, except to the extent tardily filed as permitted under paragraph (1), (2) or (3) of § 726(a) ..." The Court believes that the addition of § 502(b)(9) codified the proper construction of the law in existence prior to the 1994 amendments. Even though § 502(b)(9) is not retroactively applicable, the Court believes it consistent with the interplay between the relevant statutory sections, as articulated in *Zimmerman*, and adopts the reasoning of the court in *Zimmerman* in this regard.

**E.** *Unisys Is Estopped From Asserting The Subsequent Claim*

■ The Court finds that Unisys is estopped from asserting the Subsequent Claim due to the extraordinary delay in filing that claim. The Trustee and creditors of the estate relied on the claims bar date to estimate the size of the dividend to be paid in this case (see Affidavit of Harold Slaughter attached to Trustee's Motion for Summary Judgment). Unisys' unexplained eight year silence enforced this reliance. Parties filing timely claims should be rewarded for the Trustee's diligence in claims litigation. Such litigation was, in effect, funded from estate assets, and those assets would otherwise have been available for distribution to creditors. The risk of losing claims litigation is significant. Creditors filing timely claims are entitled to enjoy an increased dividend,

---

**1.** *In re Hausladen*, 146 B.R. 557 (Bankr.D.Minn. 1992) (en banc) (The court held that filing a

claim after the bar date does not result in disallowance, but relates only to the claim's priority.)

not settle for a lower dividend based on Unisys suddenly springing to action. The Court questions whether Unisys would have filed the Subsequent Claim if the Trustee had been less successful in administration of this case.

Unisys previously asserted the doctrine of estoppel in this case. In Adversary Proceeding 2–87–0089, in which the Trustee sought to recover a post-petition transfer pursuant to § 549 of the Bankruptcy Code, Unisys declared (at p. 19 of its Motion for Summary Judgment):

> This Court should apply the doctrine of estoppel under the broad concept of equity and declare that the Trustee's challenge to Debtor's prior actions and commitments upon which Unisys has clearly relied is inappropriate at this late stage of the proceedings.

The Court finds that filing the Subsequent Claim is similarly inappropriate at this late stage of the proceedings.

The Trustee raises the doctrine of laches in his estoppel argument. Black's Law Dictionary, Sixth Edition, defines "laches" as based upon the maxim that equity aids the vigilant and not those who slumber on their rights. Many courts have applied the doctrine of laches to bar untimely proofs of claim in Chapter 11 cases. "Laches" is "an equitable measure traditionally employed by courts to prevent one party from being unfairly prejudiced by another's delay, to bar untimely proofs of claim in Chapter 11 cases." *In re Wilson*, 96 B.R. 257, 263 (9th Cir. BAP 1988) (citations omitted).

In *Decko Products*, the court in a Chapter 11 proceeding held that a creditor who waited almost two years after receiving notice of the bankruptcy to file its claim was barred by laches. *Decko Products*, 73 B.R. at 276. In *In re Cmehil*, 43 B.R. 404 (Bankr. N.D.Ohio 1984) the court held that a creditor who waited more than two years before asserting a claim against the estate was similarly barred from asserting its claim. "Equity aids the vigilant and diligent, not those who sleep on their rights." *Cmehil*, 43 B.R. at 408. In *Walters v. Hunt (In re Hunt)*, 146 B.R. 178 (Bankr.N.D.Tex.1992) the court in a Chapter 11 proceeding denied the claim-

ant's request to file a late proof of claim based on the doctrine of laches when the claimant waited two and one-half years after learning of the bankruptcy to seek leave of court to file a proof of claim. "This court may apply the equitable doctrine of laches to prevent the late filing of a proof of claim if Plaintiff's delay was unreasonable." *Hunt*, 146 B.R. at 184 [citing *Morgan v. Barsky (In re Barsky)*, 85 B.R. 550, 554 (C.D.Cal.1988), *aff'd.*, 933 F.2d 1013 (9th Cir.1991)]. Here, Unisys' delay was clearly unreasonable, and laches will bar the assertion of the Subsequent Claim.

In *Barsky*, the doctrine of laches prevented a creditor in a Chapter 13 proceeding from making a claim more than two years after confirmation of a plan. The creditor did not receive notice of the meeting of creditors due to an error by the court clerk. Prior to confirmation of the plan, the debtor called the creditor to give notice of the pending proceedings. The creditor even received a copy of the plan, which did not provide for her claim. The court described laches as:

> an equitable doctrine applied at the discretion of the court ... to protect a party against whom a claim has been asserted, from any prejudice which may result from the unreasonable delay of the party asserting the claim. To establish laches, the party asserting the defense must show (1) an unreasonable lack of diligence, and (2) prejudice resulting from that lack of diligence.

*Barsky*, 85 B.R. at 554 (citation omitted).

The Court must decide "whether a finding of unreasonable delay is consistent with the requirements of due process under the circumstances, and whether there has been an adequate showing of prejudice." *Barsky*, 85 B.R. at 554. The *Barsky* court denied the claim because of "the unreasonableness of [the creditor's] dilatory conduct in bringing the claim", noting that a determination that a creditor's delay was unreasonable is reviewed under the abuse of discretion standard. *Barsky*, 85 B.R. at 555. The eight year lapse before Unisys asserted its lease rejection damage claim is strong evidence of an "unreasonable lack of diligence," especially for a

creditor as active in the bankruptcy proceeding as Unisys. Unisys had ample time prior to the bar date to file its lease rejection claim, and waiting eight years to do so was unreasonable. Filing the lease rejection claim, even in an unliquidated amount, would have provided notice of potential rejection damages to the Trustee and other creditors, and would have avoided the prejudice that now exists.

To satisfy the second prong of the *Barsky* test, there must be prejudice resulting from Unisys' unreasonable lack of diligence. The prejudice resulting from Unisys' delay has been detailed above. The Trustee states that in the First Amended Disclosure Statement, a distribution rate of forty-seven percent (47%) was estimated as the amount payable to general unsecured creditors, not including the Subsequent Claim. The Trustee successfully objected to certain claims after the First Amended Disclosure Statement was filed, and as of December 13, 1993, the estimated distribution rate to unsecured creditors was fifty-six percent (56%). In its Memorandum in Opposition to the Trustee's Motion for Summary Judgment, Unisys argues that the Plan in this case was confirmed based on a projected distribution rate to unsecured creditors of 47%, and a reduction in funds available to other unsecured creditors due to the Subsequent Claim is not prejudicial. Even if this contention were true, the Court is not precluded from finding, · and does so find that the inaction of Unisys was prejudicial: "Allowing a dilatory creditor to wait out the proceedings before asserting her rights would significantly prejudice all involved by robbing them of the significant benefit of finality." *Barsky,* 85 B.R. at 555. Preclusion of the untimely Subsequent Claim at this late stage is clearly justified in the discretion of the Court due to the unreasonable delay, and prejudice to the Trustee and other creditors.

### F. *Subordination Of Late Filed Claims*

■ Subordination of a late filed claim is another option available to the Court. Whether to subordinate an untimely filed claim, thereby entitling the claim to participate in any surplus of the estate is at the discretion of the court. *Wilson,* 96 B.R. at 263 (holder of late filed claim denied request to participate in distributions from surplus of the estate after payment of other claims). Equitable considerations should be examined by the court to determine whether the late filed claim should be paid from the surplus of the estate. *Wilson,* 96 B.R. at 263.

■ Under 11 U.S.C. § 726(a) an untimely filed claim in a Chapter 7 case may be paid if all other claims have been paid. *Wilson,* 96 B.R. at 262. However, no statutory authority exists for allowing untimely filed claims to be paid from the surplus of the estate in Chapter 11. The case law supporting subordination of claims relies on § 726(a), allowing a tardily filed claim to participate in distribution of the estate, although with junior priority to timely claims. If the Court allowed the Subsequent Claim as an amendment, it would be inclined to subordinate that claim to timely filed claims on equitable grounds. However, regardless of the Court's ruling on subordination, there is no surplus in this estate, so subordination of the Subsequent Claim would have the same effect as disallowance.

### III. *Conclusion*

The Trustee's Motion for Summary Judgment is well taken. The Subsequent Claim is not an amendment of a timely filed claim (either formal or informal), and should have been filed prior to the bar date. Nearly eight years passed from the bar date to the filing of the Subsequent Claim. The Court concludes that the Subsequent Claim is untimely, and due to its unreasonable lack of diligence and the prejudice caused thereby, Unisys is estopped from asserting the Subsequent Claim.

Based on the foregoing, it is hereby

ORDERED THAT Unisys' Motion for Summary Judgment is DENIED; and it is further

ORDERED THAT the Trustee's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.