108 F.3d 1385
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
In re Elden Blaine HARPER, Jr. and Pauline Joanne Harper, Debtors.
EQUITY PROPERTY MANAGEMENT, INC., United States Trustee,
Plaintiffs-Appellees,
v.
Elden Blaine HARPER, Jr., Pauline Joanne Harper,
Defendants-Appellants.
 No. 95-16717.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 7, 1996.
Decided March 14, 1997.
 
 Before: RONEY*, BEEZER and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Debtors Pauline and Elden Harper appeal the Bankruptcy Appellate Panel judgment affirming a bankruptcy court decision that a $52,000 obligation owed by the Harpers for breach of a lease is nondischargeable pursuant to 11 U.S.C. § 523(a)(3)(A). That section excepts from discharge in bankruptcy a debt that is not listed or scheduled to timely permit filing of a claim by the creditor, unless the creditor has actual knowledge of the case. Holding that the bankruptcy court correctly held that the debtors should not be excused for their delay in disclosing this obligation, we affirm.
 
 
 3
 On July 11, 1991, the Harpers filed a voluntary Chapter 7 petition, including a Statement of Financial Affairs and Schedules. At that time, there was an arrearage of $971.31 on the shopping center lease in question. The Harpers chose to omit the creditor, the lease, and the debt from the schedules and lists filed pursuant to 11 U.S.C. § 521(1).
 
 
 4
 Subject to some exceptions, a petitioner who files a Chapter 7 bankruptcy petition will be granted discharge from all debt. 11 U.S.C. § 727(a). Section 523(a)(3)(A) applies to omitted debts that are potentially non-dischargeable solely because they were not scheduled. The test under the language of section 523(a)(3)(A) turns on whether the omitted creditor received notice sufficient to permit filing a timely proof of claim. No such notice was received by the creditor in this case.
 
 
 5
 This is a brief history of the lease up to 1991. On May 1, 1988, the Harpers entered into a six-year lease for space in the Muir Station Shopping Center in Martinez, California. The Harpers operated their real estate business in the leased space until September 30, 1989, when they sold their franchise to ERA Property Brokers, Inc. No notice of this sale was given to the landlord, and the Harpers continued as lessees. Mrs. Harper began working for ERA.
 
 
 6
 That was the situation in 1991 when the Harpers filed for bankruptcy and did not list the lessor as a creditor under the lease. In connection with a sale of the property in January 1990, Mrs. Harper had signed a certificate representing that she remained the tenant and occupant of the premises, had not assigned the lease or entered into a sublease, and that the lease remained in full force and was binding according to its terms. Equity Property Management, Inc., the creditor and appellee in this lawsuit, is the real party in interest as the landlord under the lease.
 
 
 7
 Because Equity was omitted as a creditor, it did not know about the September 1991 creditors meeting or the October notification that January 22, 1992 was the deadline for filing claims.
 
 
 8
 In the meantime, ERA occupied and operated out of the mall space until March 1993. After ERA closed the office, lease payments were not made and the Harpers amended their bankruptcy filing to include Equity Property Management, as an unsecured creditor holding an unliquidated, unsecured claim of $60,000.
 
 
 9
 Equity received notice on April 4, 1993 that the Harpers were in bankruptcy. In an adversary proceeding, the bankruptcy court held a trial in which it treated the Harpers' complaint for breach of the lease as one seeking nondischargeability of the damages resulting from the breach pursuant to section 523(a)(3)(A). The bankruptcy court found that the landlord had no reason to know or to suspect that the Harpers were in a bankruptcy case until then, at which time it was too late for the landlord to take action in the bankruptcy case to protect its interests.
 
 
 10
 Mrs. Harper testified that she had not reported the lease because she had been assured by ERA that they were pursuing a legal transfer of the leasehold. The bankruptcy court disbelieved Mrs. Harper's testimony, finding that the decision not to list the lease was "deliberate," and seemingly made with advice of counsel to avoid the obligations concerning shopping center leases in §§ 365(b)(3) and (d)(4). Those sections provide essentially that a trustee in bankruptcy may assume the unexpired lease in a shopping center only upon providing adequate assurance of future performance, absent which the trustee shall immediately surrender the property to the lessor. The court held the debt nondischargeable, finding Equity's damages to be $52,112.84. This figure includes mainly rent arrearages, future rent and attorneys' fees.
 
 
 11
 The Bankruptcy Appellate Panel affirmed the bankruptcy court's decision holding that the bankruptcy court correctly concluded that all of the elements of a section 523(a)(3)(A) claim were satisfied.
 
 
 12
 At oral argument, the main thrust of appellants' argument seemed to be that instead of being awarded a judgement for the full amount, not discharged by the bankruptcy proceeding, equitable considerations should limit the recovery of the creditor to the percentage that would have been received as a claim in bankruptcy. The Harpers cite no authority for this proposition, the facts do not present a scenario for equitable consideration to the Harpers, and such a result would make a nullity of the bankruptcy code provisions concerning the effect of not properly listing or scheduling such a debt. The decision not to schedule the unexpired lease was intentional. The record supports the bankruptcy court's finding that the Harpers knew they remained liable on the unexpired lease at the time they filed for bankruptcy, and they properly conceded on appeal that such liability was an obligation that they were required to disclose.
 
 
 13
 It would be inequitable for a debtor to be able to foreclose the creditor from valuable rights in the bankruptcy by not listing a claim, and then to be allowed the benefit of the dischargeability provisions of the code as if the debt had been listed. There is no support for an argument that, when debtors fail to schedule a claim, only that portion that would have been paid if a timely claim was filed is dischargeable. See 11 U.S.C. § 523(a)(3).
 
 
 14
 We have carefully examined all of the other arguments made on this appeal by brief and at oral argument as to the nondischargeable liability for the judgment entered by the bankruptcy court and find none meritorious. Appellants argue that because the deadline in unexpired lease claims in whatever deadline the "court may direct," Fed.R.Bankr.P. 3002(c)(4), the bankruptcy judge erred when he treated January 22, 1992 as the deadline for Equity's claim. Rule 3002(c)(4) does not require a court to fix a later bar date, and the bankruptcy judge did not err in declining to do so. See In re Lee Way Holding Co., 178 B.R. 976 (Bankr.S.D.Ohio 1995).
 
 
 15
 Equity, as the prevailing party and pursuant to the terms of the original lease, is awarded reasonable attorneys' fees incurred in processing this appeal and the appeal to the BAP. The amount of fees payable under this order shall be determined by the Ninth Circuit's Appellate Commissioner Peter Shaw, and the matter is referred to him in San Francisco, California, for resolution. Equity's request for sanctions is denied.
 
 
 16
 AFFIRMED.
 
 
 
 *
 The Honorable Paul H. Roney, Senior Circuit Judge for the Eleventh Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3