**IN RE: Michael Jerome BELL, Debtor(s).**

Michael Jerome Bell, Movant(s).,

v.

**Brothers Properties Smyrna, LLC, Respondent(s).**

CASE NO. 14–64122–JRS

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Signed July 21, 2015

Soo J. Hong, Blevins & Hong, PC, Marietta, GA, for Debtor.

CONTESTED MATTER

**ORDER REGARDING TRUSTEE'S OBJECTIONS TO THE CLAIMS OF BROTHERS PROPERTIES SMYRNA, LLC, CLAIM NOS. 6 AND 7**

James R. Sacca, U.S. Bankruptcy Court Judge

The two issues before the Court are (1) the novel issue of whether a court is re-

quired under Fed. R. Bankr.P. 3002(c)(4) to set a deadline for lease rejection claims in a Chapter 13 case separate and apart from the general bar date for filing claims and (2) whether the Court should allow the filing of the landlord's claims in this case. These issues came before the Court on the Trustee's Objections to the Claims of Brothers Properties Smyrna, LLC ("Brothers"), Claims Nos. 6 and 7 (the "Objections") [Docket Nos. 28 and 29] and the Responses thereto. At the hearing on the Objections, the Court heard from counsel for Debtor, Respondent and Chapter 13 Trustee. The matter was taken under advisement at the conclusion of the hearing and the parties were given the opportunity to submit authorities for the Court's consideration. The Chapter 13 Trustee filed a List of Authorities [Docket No. 32] and counsel for the Respondent filed a "Supplemental Response Regarding Claim No. 7 and Request to Set Deadline for Filing Proof of Claim" [Docket No. 33]. The Court has reviewed all matters of record and the matter is now ripe for consideration.

The facts in this case are not in dispute. Prior to the commencement of this case, Debtor entered into a commercial, non-residential real property lease with Brothers (the "Lease"). After falling behind on rent, Debtor abandoned the leased premises in April 2014. On June 5, 2014, without first terminating the lease, Brothers filed a lawsuit against the Debtor in the Magistrate Court of Cobb County seeking past due rent, as well as unpaid rent accruing under the lease. On July 22, 2014, Debtor filed the instant case and filed bankruptcy schedules that listed Brothers as having a general unsecured claim in the amount of $4,986.98, which amount the Debtor believed to be owed under the Lease at the time of the filing of the case.

As in every Chapter 13 bankruptcy case in this district, the Clerk entered on the docket and caused to be served upon all parties, including Brothers, the "Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines" ("Notice of Deadlines") [Docket No. 5]. Brothers does not deny receiving the Notice of Deadlines. The Notice of Deadlines set forth December 1, 2014 (the "Bar Date") as the deadline within which all creditors (except a governmental unit) were required to file proofs of claim in order to participate in any distribution in the case.

Contemporaneously with the petition, Debtor filed his chapter 13 plan [Docket No. 3]. Paragraph 8 of the plan, which is the standard form plan used in this district, deals with the treatment of leases and executory contracts. If a debtor wants to assume a lease, the lease must be identified in that paragraph. If a lease is not identified, the paragraph specifically states that the lease will be rejected upon the conclusion of the confirmation hearing. The Lease was not identified in this paragraph thereby indicating Debtor's intention to reject the lease. Brothers was served with a copy of this plan on July 25, 2014, at which time it knew or should have known it was Debtor's intention to reject the Lease. [Docket No. 10] Debtor's amended chapter 13 plan was filed on October 9, 2014 [Docket No. 17] and Debtor's second amended chapter 13 plan was filed on November 11, 2014 [Docket No. 19], both of which were also served on Brothers. Neither of these plans changed the treatment of the Lease. Debtor's second amended chapter 13 plan was confirmed by Order entered November 13, 2014 [Docket No. 20]. Accordingly, pursuant to Debtor's confirmed chapter 13 plan, the Lease was formally rejected.

On December 5, 2014, four days *after* the Bar Date, Brothers filed Proof of

Claim No. 6 in the amount of $8,570.49 for prepetition "back rent" (Claim No. 6"). On February 13, 2015, more than two months after the Bar Date, Brothers filed Proof of Claim No. 7 for lease rejection damages in the amount of $22,729.21 representing one year's worth of rent under the rejected Lease ("Claim No. 7").

On January 15, 2015, the Trustee filed his objection to Claim No. 6 asserting that the proof of claim was filed untimely. On February 13, 2015, the Trustee filed his objection to Claim No. 7, also asserting that the proof of claim was filed untimely.

The parties do not dispute that Claim No. 6 was filed late. With respect to Claim No. 7, Brothers asserts that the claim was not filed late because no bar date for lease rejection damage claims had been set by the Court pursuant to Federal Rule of Bankruptcy Procedure 3002(c)(4). That Rule provides:

(c) In a chapter 7 liquidation, chapter 12 family farmer's debt adjustment, or chapter 13 individual's debt adjustment case, a proof of claim is timely filed if it is filed not later than 90 days after the first date set for the meeting of creditors called under § 341(a) of the Code, except as follows:

(4) A claim arising from the rejection of an executory contract or unexpired lease of the debtor may be filed within such time as the court may direct.

The Trustee argues that the Court has fixed such a date because the claims subject to the Bar Date include "all" claims and that is broad enough to include lease rejection damage claims. There is no case law on this issue since Congress amended the Code in 2005 to increase the time period to assume or reject a non-residential real property lease from 60 to 120 days, and very little existed before that change, either.

In many chapter 13 cases, these issues either would not arise or would not be contested because a debtor's plan often provides for little or no payment to unsecured creditors. This Debtor's plan, however, provides for full payment, but this Debtor, who is paying $400 per month into his plan, does not have the cash flow to be able to pay between $22,000 and $30,000 of lease claims through his plan in addition to the other obligations being paid. Although the typical debtor could simply reduce the dividend to unsecured creditors in such a case, that solution is not available to this Debtor because his home is unencumbered and he has sufficient equity in it after his exemption that he cannot satisfy the best interest of creditors test unless all creditors with allowed claims are paid in full. Consequently, if the lease rejection claim in this case is allowed, the Debtor's case will have to either be dismissed or converted to chapter 7 and his home sold to pay his creditors. Although the Court does not find that situation to be relevant in determining what the law is on these issues, the stakes are clear: either (a) Brothers gets paid and the Debtor loses his home or (b) Brothers gets nothing and the Debtor keeps his home.

## A. Claim No. 6—Prepetition Rent

The parties do not dispute that Claim No. 6 was filed late. Brothers instead seeks relief to allow the late filing of that claim pursuant to 11 U.S.C. § 105, which provides the Court with broad equitable powers to enter any order that is "necessary or appropriate" to carry out the provisions of the Bankruptcy Code. The Court declines to exercise such powers in this case. Brothers set forth no explanation for why its proof of claim was filed untimely. Brothers received notice of the bankruptcy case and of all deadlines therein. The claim is for "back rent" due on the petition date and is unrelated to the

assumption or rejection of the Lease. No mitigating factors have been set forth by Brothers other than an equitable argument that the disallowance of the claim is a windfall to the Debtor because he does not dispute that an amount is owed to Brothers and he otherwise has equity in his assets to pay all creditors in full. Unlike in Chapter 7, the Code and Rules applicable to Chapter 13, do not provide for payment of untimely filed proofs of claims in cases where creditors can get paid, let alone paid in full.[1] Under the facts presented, the Court finds that allowing the late filed Claim No. 6 is neither necessary nor appropriate to carry out the provisions of the Bankruptcy Code. Accordingly, the Court will sustain the Trustee's objection to Claim No. 6.

### B. Claim No. 7—Lease Rejection Damages

■ The Court will likewise sustain the Trustee's objection to Claim No. 7. Brothers contends that it received notice of the lease rejection upon confirmation of the chapter 13 plan, leaving only eighteen (18) days (November 13 through December 1) within which to file a proof of claim. Brothers asserts that this time was insufficient to file a proof of claim for lease rejection damages, which claim would be for one year's worth of rent under the Lease. The Court disagrees.

First, while the Debtor's rejection of the Lease formally became effective upon entry of the confirmation order on November 13, 2014, Brothers knew or should have known that Debtor intended to reject the Lease since the filing of the first plan concurrent with the commencement of the case on July 22, 2014, more than four months before the Bar Date. Prior to the commencement of this case, the Debtor had also vacated the leased premises. In fact, Brothers commenced litigation in state court to recover under such lease after Debtor abandoned the property. Moreover, each of the plans filed in the case provided that no executory contract or unexpired lease would be assumed and no motion to assume the Lease was filed prior to the entry of the confirmation Order.

Second, Brothers sets forth no reason why, under the facts of this case, eighteen (18) days from confirmation and the formal rejection date was an insufficient amount of time to file a proof of claim constituting one year's rent. This is not a situation where the debtor changed his mind at the last minute and decided to reject the Lease or the Bar Date came out of the blue at the last minute. The Bar Date was set at the beginning of the case, the original plan contemplated a rejection of the Lease, the plan first came on for confirmation on October 22, 2014 and then was continued until November 13, 2014. Brothers had plenty of notice that the Lease was to be rejected, the calculations related to the proof of claim were not complicated and could have been made rather quickly. Had the plan filed on November 11, 2014, two days before the confirmation of the plan, been the first plan to propose a rejection of the Lease, the Court would certainly consider the equities of allowing a late filed claim with only 18 days' notice that the filing of such a claim was necessary. But that is not the facts of this case.

Third, unlike in a chapter 11 case where no bar date is set at the outset of the case, this is a chapter 13 case and a bar date is set immediately pursuant to Rule 3002(c).

---

**1.** In Chapter 7 cases, untimely filed unsecured claims are subordinated to the payment of other unsecured claims, but they can still participate in a distribution if funds are available. 11 U.S.C. § 726(a)(3). No such provision exists in Chapter 13.

The argument that Rule 3002(c)(4) requires a separate bar date for rejection claims is not correct. Brothers did not present, and this Court could not find, any authority supporting such a position.[2] The Court did find two chapter 7 cases in which it was held that Rule 3002(c)(4) permitted, but did not require, a court to set a separate bar date for lease and contract rejection claims. *In Equity Property Management, Inc. v. Harper (In re Harper)*, 108 F.3d 1385 (9th Cir.1997)(stating that the Rule does not require a court to fix a later bar date); *In re Lee Way Holding, Inc.* 178 B.R. 976 (Bankr. S.D.Ohio 1995). In *Lee Way*, the court noted that purpose of the Rule was to provide creditors with sufficient time to file rejection claims if there was insufficient time to do so prior to the regular bar date. If it was determined that there was not sufficient time, a court had the authority to fix a later date. That court found that the lessor had ample time to file a claim before the regular bar date and it never requested that the court either set a specific date for it to file a rejection claim or otherwise to extend the time to file its claim and, consequently, it took the risk that the court would not allow a claim filed after the bar date. *Id.*

Because Rule 3002(c)(4) does not provide for different treatment in chapter 7 and 13 cases, if the Rule does not require that a separate bar date be fixed in a chapter 7 case, it would not be required in a chapter 13 case. The amendment to Section 365(d)(4) increasing the time to assume or reject a non-residential real property lease from 60 to 120 days potentially complicates the matter in a chapter 13 case because the 60 day period within which lease would previously be deemed rejected if not assumed, or provided to be assumed in a plan would have been about 60 days before the bar date. The 120 day period now in effect falls at about the same time as the bar date, but confirmation could occur either months before or after the 120 day period expires. Despite this potential complication for lessors, if Fed. R. Bankr.P. 3002(c)(4) did not require a separate bar date for lease rejection damage claims before the change in the law, it would not require a separate bar date after the change because the Rule is the same. What it does mean is that courts may be faced more frequently with having to exercise their discretion to fix a separate date to file rejection claims if necessary, extend the time to file rejection claims or allow late filed rejection claims. This is the very discretion which the Rule intended to provide.

In this case, the Court set December 1, 2014 as the bar date within which "all" claims (other than governmental units) were to be filed. "All" claims includes lease rejection damage claims. This Bar Date did not preclude Brothers or any other party in interest from seeking to fix a separate bar date or requesting an extension of time to file a claim if the facts supported such relief. However, neither Brothers nor any other party in interest requested a separate bar date be fixed nor an extension of the Bar Date. The better course of action for a party to a lease or an executory contract is to file a proof of claim for rejection damages promptly after receiving notice of a plan that does not provide for the assumption of the lease or contract because such a plan evidences an intent to reject the lease or contract. In

---

**2.** The Court also finds the cases cited by Brothers unpersuasive. Also, *Liakas v. Creditors' Committee, of Deja Vu, Inc.*, 780 F.2d 176 (1st Cir.1986) and *In re Montaldo Corp.*, 209 B.R. 40 (Bankr. M.D.N.C.1997) are chapter 11 cases and, as noted above, are not germane to the issue before this Court.

such a situation, if the lease or contract is ultimately assumed, the claim can either be withdrawn or it can be objected to.

Finally, each party raised issues regarding the problems that could happen in a case if the other side's position was adopted. The Trustee raised the issue of what would happen if no separate bar date is set and, for example, a rejection damage claim is filed in month 58, with only two months left in the plan and there is not enough money remaining to pay the claim *pro rata* with other creditors? It certainly does not seem fair to the debtor to dismiss the case at that point. What if no claim is ever filed because no separate bar date was set? Would the claim be discharged? If not, the debtor would be deprived of the discharge he worked five years to achieve, which also does not seem right. Brothers, on the other hand, raises the issue of what happens if the debtor initially proposes to assume a lease, confirmation of the plan is after the bar date and the debtor changes his mind and amends the plan after the bar date to reject the lease? Is the landlord barred from filing a claim? This seems to be one of the situations that Rule 3002(c)(4) was intended to prevent. In such a circumstance, this Court cannot imagine there is any court that would not fashion some type of relief to allow a promptly filed, but otherwise late, proof of claim for rejection damages.

In summary, this Court finds that the Notice of Deadlines set forth a bar date that included lease rejection claims and that Brothers had sufficient time to file a claim for lease rejection damages before that Bar Date such that an exercise of discretion to allow the filing of a claim under Fed. R. Bank. P. 3002(c)(4) would not be appropriate. To the extent there is ambiguity in the Rule, this issue comes down to on whom should the burden rest: the debtor to request a separate bar date for rejection claims or the creditor to dili-gently protect its interest? It does not seem to this Court that the debtor should be required to set a separate bar date for rejection damage claims when a bar date for all claims has already been set. Debtors are required to file a plan within 15 days after the filing of the petition specifically identifying all leases or contracts that are to be assumed or which otherwise will be rejected upon confirmation if not identified. The bar date for filing claims is set more than 100 days after the date the plan is initially due, which is plenty of time for the holder of a lease or contract to file the appropriate proof of claim. Therefore, the burden more appropriately should rest on the creditor to protect its interests by filing the necessary proof of claim for the circumstances of the case.

Accordingly, it is hereby

**ORDERED** that the Objection to Claim No. 6 is **SUSTAINED** and that the pre-petition arrearage claim of Brothers Properties Smyrna, LLC, in the amount of $8,570.49, is **DISALLOWED** It is further,

**ORDERED** that the Objection to Claim No. 7 is **SUSTAINED** and that the rejection damage claim of Brothers Properties Smyrna, LLC, in the amount of $22,729.21, is DISALLOWED.

**IT IS ORDERED.**

